# CASES

## IN THE

# SUPREME COURT

### OF

# PENNSYLVANIA.

The Commonwealth *against* Boyer.

1807.

THE defendant was tried before Tilghman C. J. and Smith J. at a court of Oyer and Terminer, holden by the Judges of the Supreme Court in the county of *Philadelphia*, in *January* 1807, under the following indictment: "The grand " inquest, &c. &c. do present that *Nicholas Boyer*, late of the " county aforesaid, yeoman, on the first day of *May* in the year " of our Lord 1806, with force and arms at the county aforesaid " in a certain lane near the highway, in and upon one *John* " *Duffey*, in the peace of God and the commonwealth then " and there being, feloniously did make an assault, and him the " said, *John Duffey* in bodily fear and danger of his life in the " lane aforesaid, then and there feloniously did put, and *two ten* " *dollar notes of the President directors and company of the* " *bank of the United States; one ten dollar note of the President* " *directors and company of the bank of North America; one five* " *dollar note of the President directors and company of the bank* " *of Pennsylvania, and one three dollar note of the Philadelphia* " *bank*, being altogether of the value of thirty eight dollars, *of* " *the goods and chattels* of the said *John Duffey*, from the per- " son and against the will of the said *John Duffey* in the lane " aforesaid, then and there feloniously and violently did steal, " take, and carry away, contrary to the form of the act of Assem-

*Friday,*
February
20th.

An indict-
ment for
stealing two
ten dollar
notes *of the
President,
directors and
company of
the bank Uni-
ted States,* &c.
is bad. They
should be
laid to be
promissory
notes for the
payment of
money.

*Qu.* Whether
an indict-
ment is bad
for laying
bank notes
as the *goods
and chattels*
of the prose-
cutor.

1807.

Commonwealth
v.
Boyer.

" lly in such case made and provided, and against the peace and " dignity of the commonwealth of *Pennsylvania*." He was acquitted of the *robbery*, and found guilty of the *larceny;* and a motion was made in arrest of judgment upon two grounds:

1. Because the indictment did not pursue the act of Assembly in describing the property alleged to have been stolen; and the property described was not the subject of larceny at common law.

2. Because the indictment laid the property alleged to have been stolen, to be the *goods and chattels* of *John Duffey.*

It was argued on the 16th and 18th of *February*, by *Meredith* and *S. Levy* for the defendant, and by the *Attorney general* for the commonwealth.

The act of Assembly upon which the indictment was founded, was passed on the 15th *April* 1790, and the 5th section is as follows: " Robbery or larceny of obligations or bonds, bills obli- " gatory, bills of exchange, *promissory notes for the payment of* " *money*, lottery tickets, paper bills of credit, certificates grant- " ed by or under the authority of this commonwealth, or of all " or any of the *United States* of *America*, shall be punished in " the same manner as robbery or larceny of any goods or chat- " tels." 2 *St. Laws.* 804.

For the defendant it was contended, that the property described in the indictment did not appear to be such whereof a larceny could be committed; for it was not stated that they were *promissory notes for the payment of money.* A note of the President directors and company of the bank of the *United States*, is not necessarily such a promissory note; because it may in fact contain no promise or engagement whatever, and in addition to this, may have already been paid and cancelled. Where the words of a statute are descriptive of the *nature* of the offence, there it is necessary to specify in the particular words of such statute; *Rex* v. *Pemberton;* (a) and the court will not, by a forced intendment, support an indictment which is defective in the description of the crime, since they are restrained by the same principle which limits the operation of penal statutes to

(a) 2 *Burr.* 1037.

cases within their letter. The notes are also laid in this indict-  1807.
ment to be *of* the bank of the *United States* &c. The effect of ———
this language in vulgar use is not a question for the court, but  Common-
on the contrary its legal import; and this evidently is, that the  wealth
notes were the property of the bank; which leaves it still more  *v.*
doubtful whether they were promissory notes for the payment  BOYER.
of money. *Craven's* case, 2 *East Cr. Law* 601. is in point. He
was indicted upon the stat. 2 *Geo. 2. c. 25.* for stealing a certain
note *commonly called a bank note;* and all the Judges on re-
ference to them, held the indictment ill, as in describing the
property stolen, it did not follow any of the descriptions of pro-
perty in the statute.

The indictment states the notes to be of the *goods* and *chat-
tels* of *Duffey.* In the case of the *King* v. *Sadi* and *Morris,* (*a*)
it was determined by all the judges to be improper to lay bank
notes to be *chattels,* though they were also of opinion that that
word might be rejected as surplusage, if the indictment were in
other respects sufficient. In that case they were laid to be the
" *property* and chattels" of S. S.; but here if " goods and chat-
" tels" are rejected, the indictment is gone. There is no acces-
sary after the fact for receiving *money;* because money is not
goods and chattels within the acts which make it felony to re-
ceive goods and chattels, knowing them to have been stolen.
*Guy's* case (*b*), *Morris's* case (*c*), *Dean's* case (*d*).

For the commonwealth it was said that no other certainty was
required in an indictment, than what is called by Lord *Coke*
" certainty to a certain intent *in general,*" and not in every par-
ticular. No other description of the offence is necessary, than
such as will inform the defendant what crime he is called to an-
swer, as will appear to warrant the jury in their conclusion of
guilty or not guilty upon the premises delivered to them, and as
will so define the crime to the court that they may apply the le-
gal punishment. *Rex* v. *Horn.* (*e*) Can there be a question upon
the face of this indictment, what crime the defendant is called to
answer? Is not a note of the President directors and com-
pany of the bank of the *United States*, in the strictest sense a
note drawn by that incorporation? For if this preposition indi-

(*a*) 2 *East Cr. Law* 601.          (*d*) 2 *East* 646.
(*b*) 1 *Leach* 276.                (*e*) *Cowp.* 682.
(*c*) 2 *Leach* 525.

cates property in the bank, then the second reason in arrest of judgment must fail upon the defendant's own argument, since the words " of the goods and chattels" may be stricken out as surplusage; and then the articles stolen will be notes " *of* the " said *John Duffey.*" It is the same as if they were laid to be notes drawn by the company, which must necessarily be intended to be promissory notes for the payment of the money mentioned. If they had been paid and cancelled this might have been shewn under the defendant's plea. The contrary reason has too much subtility in it for justice. It leaves nothing to the discretion of the judges, who although they " will not suffer a man to be " condemned of any crime whereof the jury have not expressly " found him guilty, by any argument or implication from what " they have so found, so on the other hand they will not suffer " a criminal to escape for so trifling an exception, which it would " be absurd and ridiculous to take notice of; for *nimia subtilitas* " *in jure reprobatur.*" 2 *Hawk. c.* 25. *s.* 61. *Craven's* case turned upon its being laid to be a note *commonly called* a bank note; for if those words had been omitted, the other words would have come expressly within one of the descriptions in 2 *Geo.* 2.

That promissory notes are goods and chattels can hardly be questioned; for although bank notes which are paid and received as cash, may pass under the description of money, yet they are legally nothing more than choses in action, and are ranked under the head of chattels personal by all the elementary writers. 2 *Bl. Comm.* 397.

TILGHMAN C. J. The prisoner was indicted for the robbery of *John Duffey* in a certain lane near the highway, of the following property viz. " Two ten dollar notes of the President " directors and company of the bank of the *United States;* one " ten dollar note of the President directors and company of the " bank of *North America;* one five dollar note of the President " directors and company of the bank of *Pennsylvania;* and one " three dollar note of the *Philadelphia* bank; being altogether " of the value of thirty eight dollars of the *goods* and *chattels* of " the said *John Duffey.*"

On the trial of this indictment, the jury acquitted the prisoner of the *robbery*, and found him guilty of *larceny*. His counsel have offered two reasons in arrest of judgment. 1st. That the

indictment does not pursue the act of Assembly, by which the property alleged to have been stolen was made the subject of robbery or larceny. 2d. That the indictment lays the property to be the goods and chattels of *Duffey.*

It is admitted that bank notes were not the subject of larceny at common law. But the present question depends upon the act of Assembly of 5th *April,* 1790, *sec.* 5. by which it is enacted, " that robbery or larceny of *promissory notes for the payment of* " *money,* shall be punished in the same manner as robbery or " larceny of *any goods or chattels.*"

The punishment of robbery and larceny being severe and ignominious, we must confine ourselves to those strict rules of construction, which have always prevailed in the consideration of indictments on highly penal statutes.

The subject is not altogether new. Decisions have taken place in *England* on a statute similar to our act of Assembly; I mean the statute of 2 *Geo.* 2. *c.* 25. *s.* 3. by which, among many other things, *bank notes,* and notes *for the payment of money,* are made subjects of felony. In the case of the *King* v. *Craven,* who was indicted on this statute for stealing " *a certain note,* " *con nly called a bank note,* of the value of one pound, " marked &c. dated &c. and signed by *A. Hooper,* for the " Governor and Company of the bank of *England,* by which said " note, said *Hooper,* for said governor &c. did promise to pay " to *Abraham Newland,* or bearer on demand, the sum of one " pound, the said note being the property of one *T. G.* &c.," after conviction, *all the judges,* on reference to them in *March* 1801, held the indictment ill laid, as in describing the property stolen to be a note, commonly *called a bank note,* it did not follow any of the descriptions of property in the statute, and in *other respects* seemed inaccurate. What those *other respects* were, is not mentioned. But from what is mentioned, we see the very strict construction supported by the *English* judges. One of the descriptions in the statute is, *notes for the payment of money.* Our act of Assembly says, *promissory notes for the payment of money.* The indictment should either aver in the words of the act of Assembly, that the notes stolen were *promissory notes for the payment of money,* or give such a description as proves them incontestably to have been promissory notes for the payment of money, without conjecture, or reference to facts not stated in the indictment. In the case before us, the

1807.

Common-
wealth
*v.*
Boyer.

indictment charges the notes to be " two ten dollar notes *of* the " President directors and company of the bank of the *United* " *States*," and so of the rest. Now though I am satisfied from having often seen notes of these banks, that they must have been promissory notes for the payment of money, yet I cannot say that this positively appears on the face of the indictment. A note *of* a bank is a general expression, by no means positively importing that it is a note by which that bank promised to pay money.

It appears upon search that the precedents of indictments on this act of Assembly, have not been uniform. In the Case of the *Commonwealth* v. *Dolan and Donelly*, in the Mayor's Court *October* sessions 1801, the exception now urged was taken to the indictment. No judgment was given, because the defendants absconded; but since that time it has been usual to frame the indictments so as to avoid the exception.

Upon the whole, I am of opinion that this exception is good. The judgment must therefore be arrested.

It is unnecessary to give any opinion on the *second* point; although I would by no means have it understood, that I think the indictment bad because the notes are laid to be the *goods* and *chattels* of *John Duffey*. Yet I certainly consider it as more correct to lay them to be the *property* of the person from whom they are stolen. (*a*)

Smith J. Two reasons have been filed in arrest of judgment; if either of them be valid, the judgment must be arrested.

Whether the great strictness in favour of life, which has at all times been required in *England*, in every point of indictments in capital cases, ought to extend to indictments for offences formerly capital in *Pennsylvania*, but now subject only to imprisonment at hard labour, and a certain proportion of the time to confinement in the solitary cells, will deserve great consideration when the point comes directly before the court. For the humane Judge *Hale* complains, and the complaint has been a thousand times repeated since his time, " that " this strictness has grown to be a blemish and inconvenience " in the administration of the law; for that more offenders " escape by the over easy ear given to exceptions in indict- " ments, than by their own innocence; and many times gross

(*a*) *Vid.* 1 *Dyer* 5 *b.*

" murders, burglaries, robberies, and other heinous and crying
" offences, remain unpunished by these unseemly niceties; to
" the reproach of the law, to the shame of government, to the
" encouragement of villany, and to the dishonour of God."
2 *Hale* 193. So far as these unseemly niceties have prevailed
in capital cases decided before the revolution, we are fettered
by them. We are not at liberty to overrule an exception which
has prevailed before in a case exactly in point, although every
judge and every well read lawyer who hears it, may be con-
vinced it has no foundation in the merits of the particular case,
or in the general principles of law.

However, great as this evil undoubtedly is, it is perhaps bet-
ter that it should be submitted to, than that the opposite evil
should creep into its place. Should courts launch into a sea of
uncertainty, having no land marks to guide them, the innocent,
not knowing under a vague charge in the indictment what they
are really to answer, may suffer; and I do not know that the
guilty will have a less chance of escape than they have under
the present strictness. This consideration will make us " rather
" bear those ills we have, than fly to others that we know not of."
Where courts are not bound by established precedents or by
adjudged cases in point, they are at liberty to exercise a sound
legal discretion, in adjudging whether judgment in a criminal or
in a civil case shall be arrested.

I will now consider the two reasons filed in arrest of judg-
ment, in their order.

1. It is generally a good rule in indictments at common law,
that the special manner of the whole fact be set forth with such
certainty, as that the party may know with what offence he is
charged, and thereby be enabled to prepare for and instruct his
counsel in his defence; that those words of art, which the law
hath appropriated for the description of the offence, must be in-
serted in the indictment, and cannot be supplied by any other
words. 2 *Hawk.* 224, 5. The same rules which are laid down
in the books, respecting indictments at common law, are gene-
rally applicable to indictments on statutes. 2 *Hawk.* 245. There
is no necessity in any indictment grounded on a statute, to re-
cite that statute. But unless it be recited, neither the words
*contra formam statuti*, nor any periphrasis, intendment, or con-
clusion, will make good an indictment which does not bring
the fact prohibited or commanded, in the doing or not doing

*1807.*

Common-
wealth
*v.*
BOYER.

whereof the offence consists, *within all the material words of the statute. Idem* 249. Indeed, besides pursuing the very words of the statute, it is sometimes necessary to add other words to state the fact fully, directly, and expressly; as in indictments for perjury on the statute of 5 *Eliz.*, and for usury &c.

Now what are the material words relating to this point in the act *creating* the crimes, or to speak more correctly, making promissory notes for the payment of money the subject matter of robbery and larceny, for which the defendant has been indicted, and of one of which crimes he has been found guilty by the traverse jury? They are contained in the 5th section of the act of 5th *April* 1790. The only words in this section descriptive of bank notes, are *promissory notes for the payment of money;* but such words are not stated in the indictment in question as descriptive of the bank notes, for the robbery and larceny of which the defendant has been indicted, and for the larceny of which he has been found guilty. The words in the indictment describing the bank notes are " Two ten dollar notes of the " President directors and company of the bank of the *United* " *States*" &c. Now these not being the material words in the act of Assembly, making bank notes the subject matter of robbery and larceny, they not being so at common law, and this indictment being grounded on the act of Assembly, it cannot be supported; this exception is valid, and judgment must be arrested. However, it does not generally follow that because judgment is arrested, the party escapes punishment if guilty. The attorney general may move the court to have him bound over to answer to another indictment, and he cannot avail himself of judgment being arrested for a mistake in the indictment. He must answer to another indictment properly describing the offence with which he is charged.

2. I have my notes before me on which I had formed my opinion on the second exception; but it is not now necessary to give that opinion. I will only say, that on a consideration of all the cases, I am by no means prepared to say that laying the bank notes to be the goods and chattels of *Duffey* would vitiate the indictment, were they otherwise technically described. However, perhaps it will be advisable in future to lay them as the *property* of the owner.

<div align="right">

Judgment arrested.