The People *vs.* Jackson.

An indictment for grand larceny, in stealing bank notes, alledged that the defend-
ant feloniously stole, took and carried away ten promissory notes, called bank
notes, issued by the Chickapee Bank, for the payment of divers sums of money,
amounting in the whole to the sum of $50 and of the value of $50, ten prom-
issory notes called bank notes, issued by the Agawam Bank, &c. of the goods,
chattels and property of one B. M. *Held*, on motion in arrest of judgment,
that the indictment was sufficient.

*Held also*, that it was of no consequence whether the banks were organized with-
in the bounds and under the laws of this state, or were banks of other states or
countries, so far as the allegations in the indictment were concerned; the
names of the banks being mentioned by way of description of the property
stolen.

In an indictment for stealing bank notes it is sufficient to describe them in the
same manner as other things which have an intrinsic value, by any description
applicable to them as chattels.

The property stolen must be described with certainty to a common intent. By
which is to be understood such certainty as will enable the jury to say whether
the chattel proved to have been stolen is the same with that upon which the
indictment is founded, and as will show judicially to the court that it could
have been the subject matter of the offence charged.

Motion in arrest of judgment. The defendant was indicted
for grand larceny, in the court of oyer and terminer for the
county of Wayne. The indictment having been removed into
this court by certiorari, was sent to the circuit for trial on the
defendant's plea of not guilty. The trial came on at the circuit
held in and for the county of Wayne, in April, 1850, before
Selden, justice, when the defendant was convicted. A motion
was now made in his behalf to arrest the judgment for the insuffi-
ciency of the indictment. The indictment contained two counts,
one of which, being the one upon which the counsel for the peo-
ple relied to sustain the conviction, was as follows: " The jurors
of the people of the state of New-York in and for the body of
the county of Wayne, on their oath present, that John Willis
and John Jackson, late of the city of Syracuse, on the 10th day
of June, 1848, at the town of Arcadia in the county of Wayne,

The People *v.* Jackson.

ten promissory notes called bank notes, issued by the Chickapee Bank for the payment of divers sums of money, amounting in the whole to the sum of fifty dollars, and of the value of fifty dollars; ten promissory notes called bank notes issued by the Agawam Bank for the payment of divers sums of money, amounting in the whole to the sum of fifty dollars and of the value of fifty dollars; ten promissory notes called promissory notes, issued by the Springfield Bank for the payment of divers sums of money, amounting in the whole to the sum of fifty dollars, and of the value of fifty dollars; one promissory note called a bank note, issued by the Cobalt Bank for the payment of the sum of three dollars and of the value of three dollars, of the goods, chattels and property of one Bartholomew Moore, then and there being found, feloniously did steal, take and carry away, against the form of the statute in such case made and provided, and against the peace of the people of the state of New-York and their dignity."

It is unnecessary to notice the other count.

*J. R. Anderson,* for the defendant, submitted the following points and authorities. I. The indictment is insufficient and void for uncertainty, upon these grounds, viz. (1.) The court will take notice judicially that the Chickapee, Agawam, Springfield and Cobalt Banks, are foreign banks. (2.) The defendant is entitled, on motion in arrest of judgment, to the benefit of all the objections which could be taken on demurrer to the indictment. (9 *Wend.* 196. 1 *Chit. Cr. Law,* 339, 340, 358.) (3.) It does not appear from an inspection of the indictment, that said banks had a legal existence, or that the bills were genuine. (12 *Wend.* 547, 1 *Nott & McCord,* 9. *Barb. Cr. Law,* 171.) (4.) Stealing bank notes, or bills of exchange, &c. is no offence at common law. Where an offence is created by statute, all the facts and circumstances which constitute the offence must be stated in the indictment, or the indictment will be held insufficient. (5 *Denio,* 76.) (5.) Testing the validity of this indictment by the principles of pleading, whether in civil or criminal cases, it is fatally defective. We premise this elementary proposition : whatever is indispensably necessary to be proved,

The People *v.* Jackson.

to warrant a conviction, must be alledged in the indictment. (*See* 2 *Const. Rep. S. C.* 136; 13 *Wend.* 311, 317; 10 *Metc.* 521.) The rules of pleading which govern in the structure of a declaration are applicable to an indictment. (13 *Wend.* 317. *Selw. N. P.* 683. 3 *McLean,* 233. 10 *Met.* 521.)

II. It is generally but not always sufficient in an indictment for a mere misdemeanor created by statute, to describe the offence in the words of the statute. (3 *Denio,* 91.) But in cases of felony there is a different rule. There all the ingredients of felony must be minutely alledged. No latitude of intendment is admissible to include more than is distinctly expressed. (*See* 1 *Chit. Cr. Law,* 172, *ed. of* 1836; 9 *Cowen,* 589.) There is no intrinsic value to a bank bill. Hence describing it generally to be of a certain value will not answer. If the value of it depends upon any contingency, that must be stated, that we may see from the facts alledged in the record that it is of value. (*See* 2 *R. S.* 566, § 66 ; 1*st ed. p.* 679; 5 *Denio,* 76 ; 4 *Serg. & Rawle,* 194; *Brayton,* 131; 1 *Binney,* 201; 3 *Id.* 533 ; 2 *McCord,* 527; *Arch. Cr. Pl.* 255, *ed. of* 1846.)

III. For aught that appears in the record, the bank notes alledged to have been stolen may have been issued but not put in circulation. Hence larceny can not be predicated upon any act of the prisoner in taking them. (4 *Bl. Com.* 234, *Chit. ed. in notes.* 3 *Ch. Cr. L.* 932. 2 *R. S.* 566, § 66. *Rex* v. *Craven, Russ. & Ry. Crown Cas.* 14. 4 *Denio,* 384.)

*T. R. Strong,* for the people, cited 3 *Chit. Cr. Law,* 947 ; *The King* v. *Johnson,* 2 *Leach's Crown Cas.* 1103, *and notes ; S. C.* 3 *M. & S.* 547.)

*By the Court,* WELLES, P. J. It was not larceny by the common law to steal a chose in action, for the reason that it is only an evidence of money or other thing due from one person to another, and in itself possesses no intrinsic value. The crime could only be committed of personal goods, mere movables, having an intrinsic value.

By 2 *R. S.* 279, § 63, " Every person who shall be convicted

The People *v.* Jackson.

of the felonious taking and carrying away the *personal property* of another of the value of more than twenty-five dollars, shall be adjudged guilty of grand larceny, and shall be imprisoned in a state prison for a term not exceeding five years." Section 66 is as follows: " If the property stolen consist of any bond, covenant, note, bill of exchange, draft, order or receipt, or any other evidence of debt, or of any public security, issued by the United States or by this state, or of any instrument whereby any demand, right or obligation shall be created, increased, released, extinguished or diminished, (except such as are specified in the next section,) the money due thereon or secured thereby and remaining unsatisfied, or which in any event or contingency might be collected thereon, or the value of the property transferred or affected thereby, as the case may be, shall be deemed the value of the article so stolen." The crime of larceny, which by the common law was confined to the taking of mere personal goods and chattels, and which could be seized and taken as such by virtue of civil process, is by the above 63d section of the statute made to embrace the felonious taking, &c. of *personal property*—a term of a more enlarged and general signification, and including whatever may be regarded as personal estate, as distinguished from real property. The above recited § 66 of the statute provides a rule of evidence by which to determine the grade of the crime, whether grand or petit larceny, in the cases of stealing written securities therein mentioned; and declares that " the money due thereon or secured thereby and remaining unsatisfied," &c. " shall be deemed the value of the article so stolen." It is said on the part of the defendant that the court will take notice judicially that the Chickapee, Agawam, Springfield and Cobalt Banks are foreign banks; and that it does not appear from an inspection of the indictment that such banks had a legal existence, or that the bills were genuine. If it were a question of any importance whether the banks in question were foreign or domestic, I do not perceive how the court can take notice of the fact judicially. Bank charters are generally private statutes, and there are many banks in this state organized under the general banking law, carried on by associations

and individual bankers. In all such cases the court can not take judicial notice of them, any more than it could of an ordinary partnership between two or more individuals. But it is of no consequence whether the banks were organized within the bounds and under the laws of this state, or were banks of other states or countries, so far as the allegations in the indictment are concerned. The notes charged to have been stolen are alledged to have been *promissory notes*, issued by those banks, *for the payment of money*, commonly called bank notes, amounting to a particular sum, and possessing a specified value. It is a mere question of description of the property stolen, and in the case of notes alledged to be stolen, I think it is sufficient to describe them in the indictment in the same manner as other things which have an intrinsic value, by any description applicable to them as chattels. (*The King* v. *Johnson*, 2 *Leach's Crown Law*, 1303 ; *S. C. in error*, 3 *M. & S.* 547, 8.) In an indictment for stealing a horse it is not necessary to state the color, age, or any other particular concerning it by way of description or identity ; all that may become material as matter of proof upon the trial. And so in case of any other article charged to have been stolen. In Chitty's Criminal Law, (*ch.* 15, *vol.* 3, *p.* 946, *Springfield ed. of* 1836,) it is said "the property stolen must be stated both in quantity and number, quality, description and value, with certainty to a common intent;" by which I understand, such certainty as will enable the jury to say whether the chattel proved to have been stolen is the same with that upon which the indictment is founded, and as will show judicially to the court that it could have been the subject matter of the offence charged. It has been held sufficiently certain in an indictment to describe the property stolen as "*one hide*," of the value, &c. (*State* v. *Dowell*, 3 *Gill & John.* 310.) So a charge of stealing "*a parcel of oats*" is sufficiently certain. (*State* v. *Brown*, 1 *Devereux*, 137.) So an indictment stating that the defendant stole "*six handkerchiefs*" was held a sufficient description. (1 *Ry. & Moo. C. C.* 25.) And in an indictment for stealing bank notes under 2 Geo. 2, ch. 25, § 3, by which among other things stealing *bank notes*, and *notes for*

*the payment of money* is made felony, it was held sufficient to describe them as " divers, to wit, nine bank notes for the payment of divers sums of money, amounting in the whole to a certain sum of money, to wit, the sum of nine pounds and of the value of nine pounds," without stating the value of any individual note. (*The King* v. *Johnson, supra.*) The last case is cited without disapprobation by Mr. Chitty in his Criminal Law, above referred to, (vol. 3, p. 947,) and is nearly on all fours with the present case.

The objection that it does not appear from the indictment that these banks had a legal existence, or that the bills were genuine, I think is unfounded in fact. The indictment certainly does alledge the existence of the banks, by stating that the notes were issued by them. The allegation in this respect is general, but is sufficient. If the notes had been issued by the Bank of Geneva, it would have been necessary, according to the rule contended for, to set forth the charter, and then to aver a compliance with all the prerequisites to entitle the bank to issue notes, &c. That, I believe, was never held necessary, even in an indictment for forgery, where there is more reason for such particularity of averment. As to the want of an averment of the genuineness of the bills, the indictment states that they were issued by the banks. That is clearly sufficient.

The defendant's counsel supposes that the cases of *The Commonwealth* v. *Boyer*, (1 *Binn. Rep.* 201;) *Spangler* v. *The Commonwealth*, (3 *Id.* 553,) and *Stewart* v. *The Commonwealth*, (4 *Serg. & Rawle*, 194,) are against sustaining the indictment in the present case. In the first of those cases the indictment was for robbery and larceny of " two ten dollar notes of the president, directors and company of the Bank of the United States," &c. and various other notes described in the same way, " being altogether of the value of thirty-eight dollars," &c. The indictment was founded on an act of the legislature of Pennsylvania, making robbery or larceny of " obligations or bonds, bills obligatory, bills of exchange, *promissory notes for the payment of money,*" &c. punishable " in the same manner as robbery or larceny of any goods or chattels." After the defendant

The People *v.* Jackson.

was convicted of the larceny, the judgment was arrested, upon the ground that it did not appear upon the face of the indictment that the notes stolen were *promissory notes for the payment of money ;* that *bank notes* were not the subject of larceny at common law, and the statute did not extend to them, unless they were *promissory notes for the payment of money*—and as the statute extending the common law in this respect being a penal one, must receive a strict construction ; and as it did not in terms embrace the articles described in the indictment, as having been stolen, it could not be extended to them by implication. It will be seen that the statute of Pennsylvania differs from ours in two respects. 1. Ours makes "*personal property*" generally the subject of larceny, and then, assuming certain written securities enumerated to be personal property, declares what shall be the criteria of their value, in order to determine the grade of the crime. No such provision is found in the Pennsylvania statute. 2. In the enumeration of evidences of debt in our statute which are assumed to be the subjects of larceny, we find one of them to be a "note," without defining what kind of a note, although it undoubtedly means a note which is the evidence of indebtedness. Then again we find in the same enumeration the words " or any other evidence of debt"—an expression exceedingly comprehensive, and either one most clearly embracing the notes mentioned in the indictment in the present case. Again ; the indictment in this case is very different from the one in the case of *Boyer,* and would, I have no doubt, have been held sufficient under the Pennsylvania statute. Indeed, so far as the objections to the indictment in *Boyer's case* were held good, the indictment in this case is in the very language of the Pennsylvania statute.

In the case of *Spangler* v. *The Commonwealth,* the prisoner was indicted under the same statute of Pennsylvania, for stealing " three several promissory notes for the payment of money, viz. three bank notes, each for the payment of five dollars, of the value each of five dollars," &c. After conviction the judgment was arrested, upon the ground that by a subsequent statute, entitled " An act to amend the penal laws," passed January

30, 1810, larceny of bank notes is confined to notes of "*incorporated banks*," and also upon the ground that another statute of Pennsylvania, passed March 19, 1810, made all bank notes not issued by incorporated banks unlawful : Tilghman, Ch. J. in his opinion virtually admitting that the indictment would have been good if the question had turned upon the act of the 5th April, 1790.

In the case of *Stewart* v. *The Commonwealth*, the prisoner was indicted for burglary and larceny. The indictment charged that the prisoner the dwelling house of one Abraham Miller, &c. feloniously and burglariously did break and enter, and sundry promissory notes for the payment of money of the value of eighty dollars, of the goods and chattels of the said Abraham Miller, in the said dwelling house then and there being found, then and there feloniously and burglariously did steal, take and carry away. The prisoner was convicted, and upon error brought the judgment was reversed, upon the ground that the notes should have been more particularly described, and that it should have been set forth that the money was unpaid on them. The description of the property stolen was "sundry promissory notes for the payment of money." This case is the strongest authority I have met with in favor of the motion to arrest the judgment in the present case ; and yet it is plainly distinguishable from it. The number of the notes is not mentioned, nor by whom made. In the case at bar both of these particulars are mentioned. The rule at common law was that the indictment should contain a description of the property stolen both in *quantity* and *number, description,* and value. In the case of Stewart, neither quantity, description or number is mentioned. The indictment in the case at bar contains all these particulars. As to the remark that the indictment should set forth that the money due on the notes was unpaid, I have only to say, that as the notes charged to have been stolen in that case do not appear to have been bank notes, and as the statute of Pennsylvania of April 5, 1790, under which the indictment was found, only provides that robbery or larceny of promissory notes for the payment of money should be punished in the same manner

as robbery or larceny of any goods or chattels, and makes no allusion to the amount due on the note or notes, the remark appears to be gratuitous and unwarranted.   The decision was made in April, 1811, and it may be the court had in view the act of January, 1810, in relation to robbery or larceny of bank notes of incorporated banks, declaring that it shall be punished in the same manner as the robbery or larceny of any goods or chattels *of equal amount.*   To require the amount due on the notes in that case to be stated in the indictment, would be going beyond the current of authority in England or this state.

Several other cases were cited on the argument, by the defendant's counsel, which it is unnecessary to examine particularly.   Most, if not all of them, relate to questions of proof upon the trial, and do not elucidate those arising upon this motion in arrest of judgment.

We are satisfied that the indictment in this case is sufficient, and that the motion in arrest of judgment should be denied.

---

NIAGARA SPECIAL TERM, June, 1850.   *Selden,* Justice.