SAM. MERRILL v. THE STATE OF MISSISSIPPI.

45   651
f90   832

CRIMINAL LAW — LARCENY — INDICTMENT — DESCRIPTION OF THE THING STOLEN. — An indictment which charges the stealing of "$150 in United States currency," is void for uncertainty, and is not cured by a verdict of guilty; and after such verdict judgment should be arrested.

ERROR to the circuit court of Marshall county.    DAVIS, J.

The facts of this case are fully shown by the opinion of the court.

*W. S. Featherston*, for plaintiff in error.

Two errors are assigned in this case: 1st. The indictment does not allege the value of the property charged to have been stolen; 2d. The jury did not assess the value of the property stolen, but returned a general verdict of guilty as

charged. And from these assignments the conclusion nec-
essarily follows, if they are well taken, that the court erred
in overruling the motion in arrest of judgment. We will
notice the assignments in the order in which they stand.
The general rule of law is, that the value of the property
stolen must be alleged in the indictment, and proven on the
trial to warrant a conviction. This is a rule of law too well
established to require authorities in its support at this day.
But, to this general rule, it is said, there are exceptions,
and that bank notes form one of them. We concede that·
bank notes are considered and treated as money, and the
true rule of their value, as respects the graduating of the
offense of stealing, is the sum which upon their face they
promise to pay. 2 Whart. Am. Crim. Law, § 1765. This
author does not stand alone, but is well sustained in the
advocacy of this doctrine. But is the currency of the
United States bank bills? What is the currency of the
United States, alleged to have been stolen, in this indict-
ment? The United States have a currency known as gold
and silver. They have a currency known as treasury
notes, which are declared to be a lawful tender in the pay-
ment of debts. These currencies differ in value. Treas-
ury notes are not redeemed at par when they are muti-
lated. Mutilation depreciates them. The currency of
the United States is not bank bills. The government of the
United States is not a banking corporation. Was it not
necessary then for the state to allege, in the indictment in
this case, what the United States currency stolen was, and
what its value was? We think it was. We think this
objection to the indictment was well taken, and for this
reason the motion in arrest of the judgment should have
been sustained.

With reference to the second assignment of error, we
think there can be no doubt. In all cases of larceny the
jury must find the value of the property stolen, otherwise
the court cannot pronounce judgment of condemnation.
Unger v. The State, 42 Miss. 650 ; Shines v. The State,

ib. 331.   These cases certainly settle this point.   The court erred, therefore, in overruling the motion in arrest of the judgment.

*J. S. Morris,* Attorney-General.

The indictment is for stealing $150 in United States currency.   The jury found a verdict in the words, "Guilty as charged in the indictment," without finding the value of the thing stolen.    Defendant moved in arrest of judgment, because the value was not averred in the indictment, and because the jury failed to find any value.   The motion was overruled and the prisoner sentenced to three years imprisonment in the penitentiary.

Plaintiff in error relies upon the cases of Shines v. The State, 42 Miss. 332 ; and Unger v. The State, ib. 648.   The court based its decision on article 264 of the Code of 1857, p. 615, which is re-enacted *in hæc verba* in the Code of 1871, and on Wilburn v. The State, 8 Smedes & Marsh. 345.   The cases of Shines and Unger are neither of very weighty authority upon the point in question, because the point is not assigned for error in either case, and not noticed in the briefs of counsel in either case.   The court seemed to dig the point out of the record, and both cases really go off on other points.   On this point these cases are nothing but the opinion of the judges given without argument ; and while their opinions are entitled to the greatest respect, on any question of law, whether argued before them or not, they cannot be acted on by inferior courts as authority in cases where the facts are different, and to which other well-settled principles apply.    And the more particularly so when such opinions are at variance with what has heretofore been regarded as well-settled principles of law.   2 Bishop's Cr. Proc., § 719 ;  Wilburn v. The State, 8 Smedes & Marsh. 345.

The statute referred to (Code of 1857, p. 604, art. 193) dispenses with proof of value where the charge is for stealing United States securities or bank notes.   If it was not neces-

sary to prove it, it was not necessary to aver it in the indictment ; and, if not required to be averred or proven, it was not necessary for the jury to find it, further than a general finding as in this case. The rule would probably be different on a charge of stealing calves, as in the Shines' case, or in stealing cotton as in the case of Unger, for the statute has provided no rule or measure of value for them as it has for United States currency. Besides, in the absence of the statute, United States currency is the lawful measure of value for every other commodity, and it would be absurd to aver any other value to it than its face value.

TARBELL, J.:

The plaintiff in error was indicted at the November term, 1871, of the Marshall county circuit court, the material portions of the presentment being as follows : "That Sam Merrill (colored) * * * did enter the counting-room of Sam Frank, a merchant in Holy Springs * * * and of his goods and chattels then and there and being found, he, the said Sam Merrill, feloniously did steal, take and carry away $150 in United States currency."

The accused, on being arraigned, pleaded not guilty, and the trial resulted in his conviction. The verdict is in the following words : " We, the jury, find the defendant guilty as charged in the indictment." Counsel then moved in arrest of judgment, on the grounds, 1st. Because the jury returned a verdict of guilty against him without finding or assessing the value of the property or article alleged to have been stolen in the indictment ; 2d. Because the indictment does not allege on its face the value of the property or articles alleged to have been stolen. This motion was overruled, and the accused sued out a writ of error. In this court it is alleged that the court below erred in overruling the motion in arrest of judgment, in deciding that it was not necessary to allege in the indictment and prove on the trial the value of the property stolen and in pronouncing

judgment against the prisoner when the jury had not found
the value of the property stolen.

The evidence on the trial is not sent up, but the record
contains the instructions of the court to the jury, of which
there were three on the part of the state and seven for the
accused.   There was no motion to quash the indictment on
the part of the accused, nor for leave to amend by the pros-
ecution.   From the first instruction for the state, it would
appear that the guilt of the accused was made out by proof
of the loss of the currency and finding it in his possession.
The second charge for the state instructed the jury that it
was unnecessary to prove or to find the value of the cur-
rency, further than the amount shown to have been stolen.
The third charge instructed the jury to specify, in their
verdict, the amount of currency stolen, in case of conviction.
An instruction asked by the accused as to proof of value
of property stolen, and the duty of the jury to assess the
value, was refused.

The second was given, and instructed the jury that
"nothing is recognized by the constitution of the United
States, as money, except gold and silver, and legal-tender
notes.   All other currency or bank bills have merely a con-
ventional value which must be proved."   The remaining
instructions are upon the force of circumstantial evidence,
reasonable doubts, etc.

This abstract of the record is made to show the scope of
the case on the trial, within the view of the court and coun-
sel.   In regard to the indictment, we observe that "cur-
rency" is an uncertain and indefinite description of property.
It is defined by lexicographers, thus: "A continual pass-
ing from hand to hand, as coins or bills of credit; circula-
tion, as the currency of cents, or of English crowns; the
currency of bank bills, or of treasury notes.   General esti-
mation; the rate at which any thing is generally valued;
that which is current or in circulation as a medium of
trade.   The word may be applied to coins, or to bills issued
by authority.   It is often applied to bank notes, and to

notes issued by government." Iron, copper, gold dust and ivory, gold and silver coins, bronze and other things have, in different periods and in various countries, constituted the currency of those countries. So paper money, such as bank bills, the promise to pay of individuals, called, in common parlance, "shin-plasters," and other contrivances, have at times passed current. In this state, at the present time, "certificates of indebtedness," if not even our state warrants, are a species of local currency. In the United States there are several kinds of currency, viz. : Gold and silver coins of our own coinage, United States treasury notes, and the "national currency" proper, being the bills or notes of the national banks, organized under the laws of congress. There are "United States Notes," "Treasury Notes," "Demand Notes," "United States Bonds," "Certificates of Indebtedness," etc., declared by the laws of congress "lawful money and a legal tender." These laws also refer to "postage and revenue stamps for fractional currency," and "fractional notes, commonly called postage currency," in lieu of which the present "fractional notes" were issued, and are treated, in the United States statutes, "as circulating as currency," made a legal tender, etc. The secretary of the treasury is empowered to destroy "mutilated currency," including treasury notes, the bills of the national banks, etc., and hence this "mutilated currency" possesses a less value in proportion to its mutilation.

The words "obligation or other security of the United States," used in the act of congress of June 30, 1864, or declared in a subsequent act to "include all bonds, coupons, national currency, United States notes, treasury notes, fractional notes, checks for money of authorized officers of the United States, certificates of indebtedness, certificates of deposit, stamps and other representatives of value of whatever denomination, issued by any act of congress."

These references are made to demonstrate the great uncertainty of this indictment, and for the same purpose we now

quote article 193, Code, 604: "If any person shall steal * * * any public security issued by the United States, * * * or any instrument whereby any demand, right or obligation shall be created, increased, released, extinguished or diminished," etc.

The plaintiff in error is charged with having stolen "United States currency." Was it gold or silver? If so, value should have been alleged and proved. Was it any of the various kinds of paper currency? If yea, which? Was it "any public security issued by the United States," within article 193 above quoted? We have seen above the large number and variety of securities issued by the United States; of all that long list, which did plaintiff in error feloniously appropriate? But we are not aware, except in popular phrase, of a "United States currency." There is a "national currency," a currency of coins and a paper currency of notes, if not a "mutilated currency," all which may be denominated the currency of the United States; but, as far as we are informed, the laws of congress do not define by that term a "United States currency," so that strictly there is no such currency as that specifically mentioned in the indictment.

Of the numerous evidences of value or promises to pay, issued by the United States as public securities, which enter into and help to create our currency, which was it the plaintiff in error stole? The indictment fails to furnish the answer, or to state whether it might not have been gold or silver.

In view of the foregoing facts it requires no argument to prove that a judgment upon the indictment in this case, whether of acquittal or conviction, can afford no protection to the accused, under the plea of *autre fois acquit* or *convict*.

It is provided in article 193, Code, 604, be forereferred to, that if any person shall steal any of the evidences of debt, or public securities therein specified, the money due thereon shall be deemed the value of the article stolen, without

further proof thereof. In other words, the amount expressed on the face of a bank note, treasury note, United States note, demand note, etc., shall be deemed the value without proof, and, of course, its value need not be averred in the presentment.

The difficulty with this indictment in our view is, that it does not specify the currency stolen, whether gold, silver or paper, and, if the latter, which of the several denominations of public securities, evidences of debt, or representatives of value was taken, and this for the protection of the accused, as well after as before, and upon the trial. This leads us to the question : Is this defect cured by the statute of jeofails, article 7, Code, 573 ? Is the offense in this indictment alleged, "certainly and substantially described" within the meaning of that statute ? To both these questions we answer in the negative. Wherefore we reverse the judgment and dismiss the indictment.