## ABE JONES VS. THE STATE.

1. CRIMINAL LAW: *Indictment.*

An indictment for the larceny of a mule of the value of one hundred dollars, the property of one A., is sufficient, without the words " personal property." On the face of the indictment the property is "personal." An indictment charging the larceny of property, the description of which shows it to be personal, is not obnoxious to the objection of uncertainty, nor that the statutory definition of the offense is not pursued. In an indictment for stealing a horse, it is not necessary to state the color, age, or any other particulars concerning it by way of description, or identity, all that may become material as matter of proof on the trial.

2. SAME : *Recent possession of stolen property.*

The use of the term *prima facie* instead of presumptive, in connection with the possession of property recently stolen, while the distinction is recognized, yet it could have no influence on the result., Presumptive is the term used by the text writers, but this term *prima facie*, and circumstantial evidence are very closely allied, and discussed in the same connection. Proof of guilt from the possession of stolen goods is but fixing the crime by means of circumstantial evidence. It is not error to instruct the jury that " the possession of property recently stolen is *prima facie* evidence that the possessor stole it, and it devolves upon such possessor to show that he came honestly in possession of the same, unless the same appears in evidence in the cause. If in any case this point could be material, it is not in the case at bar, as the verdict does not rest upon this point.

3. SAME: *Sentence by the court.*

The rule of law requiring the court (before pronouncing sentence upon the prisoner) to ask the prisoner if he has anything to say why the sentence of the court shall not be pronounced, is required only in capital cases, and the authorities are in conflict as to whether it is mandatory even in capital cases. The rule is founded in reason and common justice, and its observance is recommended in all grades of felony, yet we are disposed to enforce it only in capital cases.

ERROR to the Circuit Court of *Madison* County.

Hon. W. B. CUNNINGHAM, Judge.

Plaintiff in error, jointly with one Thompson, was indicted for the larceny of two mules, property of Wm. Adkins and Lem. B. Sides. He moved to quash the indictment for the following reasons to wit:

1st. Because in alleging the larceny as to the property stolen, the term "personal" is left out as to the first mules averred to be stolen.

2d. Because of uncertainty in describing the property, the averments being "one mule, did take," etc., without the color, size, height or sex being stated, which is too general to notify defendant of the nature of the accusation against him, and is too vague for the certainty and circumstantiality required in an indictment.

3d. Because said indictment is void for uncertainty.

4th. Because under this indictment a charge may be made by the grand jury, and the petit jury may try a different offense which is against the law and the constitution. The court overruled the motion, to which defendant excepted.

Defendant pleaded "not guilty," and went to trial. The jury returned a verdict of "guilty," whereupon the court sentenced the accused to four years imprisonment in the penitentiary, from which judgment and sentence he prosecutes a writ of error to this court.

And assigns for error the following:

1. The court erred in overruling the motion of the defendant below to quash the indictment.

2. The court erred in granting the state its instructions.

3. The court erred in modifying defendant's 7th instruction.

4. The court erred in refusing defendant's 5th and 6th instructions.

5. The court erred in overruling defendant's motion for new trial.

6. In passing sentence the court below did not ask the defendant below if he had anything to say why the judgment of the court should not be pronounced upon him.

On behalf of the state, the court instructed the jury:

1. "The possession of property recently stolen is *prima facie* evidence that the possessor stole it, and it devolves upon such possessor to show that he came honestly in possession of the same, unless the same appears in evidence in the cause."

2. "If the jury believe from the evidence that the mule of Mr.

Sides was stolen, and that soon after the defendant had said mule in his possession, they will find him guilty as charged, unless he gave at the time he was charged with the taking, some reasonable account of how he came by the mule, or unless it has been shown in evidence that he came honestly in possession of the same."

3. "It is not necessary, in order to convict the defendant that the jury should believe that he "stole" both mules mentioned in the indictment. If he stole one of them, or assisted in so doing, he is guilty as charged."

The court refused the 5th and 6th instructions asked by the accused, as follows :

5. "If the jury believe from the evidence that Abe Jones received the mule after the act of larceny was committed, and at a different time and place, in a different neighborhood of that of the commission of the larceny, he will be acquitted by the jury."

6. "There being no charge in this indictment of buying or receiving stolen property by defendant Abe Jones, nor of his being an accessory after the fact, though the jury may believe from the evidence that after the commission of the larceny, he aided and abetted in receiving and in disposing of it, they will acquit the defendant Abe Jones."

The accused asked the following : "The testimony of a party turning state's evidence is ever suspicious, and should not be credited unless sustained by corroborating evidence."

The court erased the words "not be credited unless sustained by corroborating evidence," and inserted the words, " be received with care and caution."

*J. W. Jenkins*, for plaintiffs in error :

The omission of the word " personal " in the indictment is fatal. Code of 1871, § 2884. The definition of the offense must be given. Williams *v.* The State, 42 Miss., 328; Starkie Crim. Pl., 249; 1 Chitty Crim. Law, 280, 283; Ainsworth *v.* The State, 5 How., 242 ; Anthony *v.* The State, 13 S. & M., 263 ; Ike *v.* The State, 23 Miss., 525 ; Riggs *v.* The State, 26 id., 51; Kline *v.* The State, 44 id., 317 ; Rev. Code, 1857, p. 573, art. 7. Accused has

a right to be heard and to demand the nature of the accusation. Const. of Miss., art. I, sec. 7 ; Merrill v. The State, 45 Miss., 651. The penalty imposed was within one year of the highest in the power of the court.   Rev. Code, 1871, § 2652.

*Frank Smith,* on the same side :

The indictment must state the nature of the crime.  Cowp., 682, 5 T., 611, 623.   The indictment must be certain.  Blk. Com. ; Lambert v. The People, 9 Cow., 586, 587 ; Haywood v. The State, 47 Miss., 2, 3 ; Lewis v. The State, 49 id., 354 ; Code 1871, § 2652.   The possession of stolen property is not *prima facie* evidence.   It is but a mere presumption of guilt.   Jones v. The State, 30 Miss., 653 ; 3 Greenl., § 31.   The guilt must be fully proven.   3 Greenl., § 29.   Defendant's instruction (as originally drawn), contains the correct rule of law.   1 Greenl., §§ 380, 381 ; 1 Starkie Ev., 524, § 87.   The instructions should have been given.   Payne v. Green, 10 S. &. M., 508–512 ; Roscoe's Crim. Ev., p. 815 ; 3 Greenl., p. 49, 50.   The accused should have been asked if he had anything further to say why the sentence of the court should not be pronounced upon him.   Edwards v. The State, 47 Miss., 584–591.

*G. E. Harris,* Attorney General, for the state :

The motion to quash the indictment was properly overruled. 2 Bish. Crim. Pr., § 663 ; 2 Russel on Cr., 107.   The word " personal," as descriptive of the property, is not necessary.   Jones v. The State, 4 Cush., 247 ; 30 Miss., 653 ; Wash Davis v. The State, 50 id., 86.   As to the instruction on " receiving stolen property," it was an abstraction.   Josephine v. The State, 39 id., 613.   It is unnecessary in capital cases to ask the accused if he has anything further to say why sentence should not be pronounced, and not even indispensible in a capital case.   1 Bish. Crim. Pr., § 865 ; James v. The State, 45 Miss., 572.

TARBELL, J., delivered the opinion of the court.

The plaintiff in error having been convicted under § 2652 of the code, of grand larceny, brings his case to this court for review.

The indictment charges the larceny of " one mule, the property of William Adkins, of the value of $100," and " one mule of the value of $100, of the personal property of Lem. B. Sides."

There was a motion to quash the indictment on two grounds: 1. Because of the omission of the term " personal " from the averment of the theft of the mule of William Adkins; 2. Because of uncertainty in the description of the mules, their age, color, size, sex, etc., not being given.

This motion was overruled.

On the trial there was an instruction that the possession of property recently stolen is *prima facie* evidence that the possessor stole it. To this the accused objected and excepted, on the ground that the use of the term *prima facie* instead of presumptive was erroneous.

Two instructions asked by the accused the court declined to give, viz:

" 5. If the jury believe from the evidence that Abe Jones received the mule after the act of larceny was committed, and at a different time and place in a different neighborhood from that of the commission of the larceny, he will be acquitted."

" 6. There being no charge in his indictment of buying or receiving stolen property by defendant Abe Jones, nor of his being an accessory after the fact, though the jury may believe from the evidence that after the commission of the larceny he aided and abetted in receiving and in disposing of it (the property), they will acquit the defendant Abe Jones."

To the refusal to give these instructions the accused excepted.

The accused asked this instruction: " The testimony of a party turning state evidence is ever suspicious, and should not be credited unless sustained by corroborating evidence; " which was refused and modified so as to read thus: " The testimony of a party turning state evidence is ever suspicious and should be viewed with care and caution."

There was a motion for a new trial, which was overruled. Thereupon the court sentenced the accused to four years in the

penitentiary without asking him if he had anything to say why sentence ought not to be pronounced.

The foregoing statement of the case presents all the questions raised in the record or by the errors assigned.

The motion to quash the indictment was properly overruled. On the face of the indictment the property is personal.    To hold the averment bad for want of the word " personal," would be an unprecedented refinement upon criminal practice.    Adjudications precisely in point are numerous both in this country and in England.    In several of the states, bank bills are included in their criminal statutes in the term " personal property."    Held, that an indictment describing the bills stolen as the bills of the owner, omitting the term " personal property," was good.    So, courts of the highest authority have held other words, the equivalent of " personal property," sufficient, and sustained indictments using the former though the latter were employed by the statute. Chattel implies property and ownership.    Property is real, personal or mixed.    An indictment charging the larceny of property, the description of which shows it to be personal, is not obnoxious to the objection of uncertainty, nor that the statutory definition of the offense is not pursued.    Further discussion is unnecessary. The sufficiency of the indictment in this case, as to the foregoing particular, is illustrated in numerous authorities.    Code, § 2652; State v. Odum, 11 Tex., 12; Rex v. Morris, 1 Leach's Crown Cas., 468; Turner v. State, 1 Ohio St., 422, and other cases.

In an indictment for stealing a horse, it is not necessary to state the color, age or any other particular concerning it by way of description or identity; all that may become material as matter of proof upon the trial   The People v. Jackson, 8 Barb., 637; Rex v. Stroud, 6 Car. & P., 535.

The objection, that the mules are not sufficiently described is not well taken.    The authorities are all the other way.    2 Archb. Cr. Pr. & Pl., 355-13, et seq. ; 3 Ch. Cr. Law, 947 ; 2 Bish. Cr. Pr., § 633-5, et seq. ; The People v. Jackson, 8 Barb., 637; Eastman v. Commonwealth, 4 Gray, 416 ; State v. Calvin, 2 Zab., 207 ;

People v. Holbrook, 13 Johns., 90; People v. Kent, 1 Doug. (Mich.), 42 ; 2 Russell on Cr., 112.

The case at bar is quite distinguishable from Merrill v. The State, 45 Miss., 651; Lewis v. The State, 49 id., 354; Williams v. The State, 42 id., 328, referred to by counsel for the rule that indictments upon statutory offenses must pursue the precise language of the statute. It is only necessary to observe that it is the substance, not the shadow, which should inspire the administration of justice.

As to the use of the term *prima facie* instead of presumptive in connection with the possession of property recently stolen, while the distinction is recognized, it is, however, too nice, in this, that it could have no influence on the result. Presumptive is the term used by the text writers, but this term, *prima facie* and circumstantial evidence are very closely allied and discussed in the same connection. Proof of guilt from the possession of stolen goods is but fixing the crime by means of circumstantial evidence. Starkie, in his work on Evidence, vol. 3, p. 1245, discusses this mode of establishing guilt as a presumption of fact arising or derived by means of common experience of mankind from the course of nature and the ordinary habits of society. Mr. Phillips, vol. 1, p. 599, defines a presumption as a probable inference which our common sense draws from circumstances usually occurring in such cases. In Wharton's Am. Cr. Law, § 728, this evidence is treated as a presumption, but it is referred to in § 1777 as *prima facie* evidence of guilt. And in § 729, *prima facie* is employed as the synonym of presumptive. Presumptive and *prima facie* are treated as synonymous in Davis v. The People, 1 Parker's Cr. R., 447 ; and to the same extent, also, in Kelly v. Jackson, 6 Peters, 622 ; but, upon the latter case, the learned American editors of Phillips' Evidence, state this distinction, viz.: that the jury are exclusive judges of presumptive or circumstantial proof; but that on a *prima facie* case, a judgment of law arises, and if not rebutted, remains sufficient. The latter distinction is also made by Wharton, 1 Am. Cr. Law, § 729, in these

words : " In larceny the mere possession of stolen property is not sufficient for conviction;" 3 Greenl. Ev., § 31 ; People v. Chambers, 18 Cal., 383 ; 20 id., 177 ; for, says this writer, " the presumption is not one of law but of fact." R. v. Langmead, 9 Cox. C. C., 467.   See further, Bouv. Law Dic., title, *Prima Facie;* Presumption ; Burr. Law Dic., title same.

This evidence is discussed by Mr. Greenleaf, vol. 1, § 33, under the appellation of " disputable presumption," and he says: "The law defines the nature and amount of the evidence which it deems sufficient to establish a *prima facie* case, and to throw the burden of proof on the other party."   This author also says : " The presumption arising from the possession of goods recently stolen is for the jury."   Vol. 3, § 31.

The instruction in the case at bar involved is this : " The possession of property recently stolen is *prima facie* evidence that the possessor stole it, and it devolves upon such possessor to show that he came honestly in possession of the same, unless the same appears in evidence in the cause."

It is quite probable that this instruction might have been more professionally drawn by following the more elegant expressions of the text writers, showing how a presumptive guilt arises by the possession of the fruits as the evidence of the crime, but it is doubtful if an instruction thus constructed would be as clearly understood by the jury as the foregoing.   *Prima facie* is in general use and well understood by the mass of people, such as usually sit on juries, and they could not have been misled, even if there is any, the slightest error.

If, in any case, this point could be material, it is unimportant in the case at bar, as the verdict does not rest upon this merely *prima facie* or presumptive evidence.   But, if it rested alone upon this presumption of guilt arising from the possession of property recently stolen (see Jones v. The State, 30 Miss., 653 ; Unger v. The State, 42 id., 642), it was still, by all the authorities, a question for the jury.   Unger v. The State, *supra.*   In which case, the learned judge, who delivered the opinion of the court, says :

" In prosecutions for larceny, where the goods are proved to have been stolen, it is an admitted rule of law, applicable in these cases, that possession by the accused, soon after they were stolen, raises a reasonable presumption of his guilt. Such evidence is sufficient to make out a *prima facie* case on the part of the state, proper to be left to the jury, and without opposing testimony, would generally be sufficient to sustain a verdict of guilty."

The instructions asked for the accused, and refused by the court, are objectionable on several grounds. There is no evidence on which to base them. If there was, they are seriously defective on the theory which they attempt to propound.

As to the instruction, modified by the court, there is no evidence in the record to show the witness a participant in the crime, or that he turned " state's evidence," quoting the term as used in the instruction. But if this were so, the instruction, as modified, is strictly in accordance with the authorities. 1 Greenl. Ev., § 380.

The verdict is based upon ample proof of guilt, and the motion for a new trial was correctly overruled.

Finally, the rule declared in Edwards *v.* The State, 47 Miss., 584, is sought to be applied in all cases of felony. In response to this appeal, this subject has been again fully reviewed, and the practice is not found to be uniform.

From the language of Chitty (Cr. Law, vol. 1, p. 699–701), it is inferable that the accused in all grades of felony, after conviction and before sentence, is asked if he has anything to say why the judgment of the court shall not be pronounced ; but it seems to be certain, that it is required only in certain capital cases. 4 Bl. Com., ch. 28; id., ch. 29 ; 3 Stephen's Com., p. 9, note (n); 4 id., ch. 23, p. 436, note (b) ; Rosc. Cr. Ev., 208, citing the statute regulating the practice, 4 Geo. IV, ch. 48.

The adjudications are conflicting in Georgia. Grady *v.* The State, 11 Ga., 253 ; Sarah *v.* The State, 28 id., 576. In the former of these cases, the practice was held to be proper, on conviction upon a capital charge ; but in the latter and later case it

is held not fatal, although the sentence was death.  The practice was repudiated in People *v.* Stuart, 4 Cal., 218.  In New Jersey it is held, that the inquiry of the prisoner, and the record of it, are necessary in capital cases, and in these only.  West *v.* The State, 2 Zab., 212.  In The State *v.* Ball, 27 Mo., 324, the court say:  " In capital cases, the record should show that the prisoner was present when the verdict is rendered, and that he was asked, before judgment pronounced, if he has anything to say why sentence of death should not be passed.  In England, this is considered necessary even in clergyable felonies; but no decisions have been found in that country where the omission of the allocution alone is held fatal except in cases of high treason.  *  * Whether, under our practice, it would be necessary to reverse a judgment in a capital case because of the omission on the record of what is termed the allocution, or the formal address of the judge to the prisoner, asking him why sentence should not be pronounced, when the record shows that he was present during the whole trial and at the rendition of the verdict and judgment, and that he filed his motion for a new trial and in arrest of judgment, it is not necessary in this case to determine.  The reason given for the importance attached to this form in England is, that the revising court may see that the prisoner had an opportunity of moving in arrest, or of pleading a pardon.  It would not be material here, whether a pardon was produced before or after judgment, as no attainder or other consequences result from a capital conviction here, which a pardon even after judgment may not remove."

HAND, J., in Safford *v.* The People, 1 Parker's Cr. R., 474, after citing several English authorities, says:  " Most of the cases above cited were upon convictions for treason, but the principle is the same; and the reason stated in all the books is, that the prisoner may have a pardon to plead or he may move in arrest of judgment; and neither Chitty nor Blackstone make any distinction.  The former says, it is indispensably necessary, even in clergyable felonies.  The practice has its foundation in good

sense and common justice, and the principle certainly applies to all cases of felony." For an explanation of the term "clergyable felonies," and for an enumeration of the crimes embraced therein, see Bl. Com. and Stephen's Com., *supra;* Bouv. L. Dic., title, Benefit of Clergy ; Burrill's L. Dic., same title. With reference to the practice under consideration, it is said, in Sarah *v.* The State, *supra*, that " the ancient practice was for the court to call on the prisoner, if he or she had anything to say why sentence should not be passed. It originated at a time when prisoners were not allowed the benefit of counsel, and when the. court' was counsel for the prisoner, so far as to see that he was deprived of no legal right. Besides, the benefit of clergy was also allowed ; and at this stage it was claimed. * * Our penal code prescribes, with some minuteness, the formula to be observed in the trial of criminal cases. No allusion is made to this ancient ceremony. Prisoners, represented by counsel, as they now are, lose no right by the omission. One of the reasons assigned in the books for the observance of the practice is, that a motion may be made in arrest of judgment. These motions are made daily, and always before the prisoner is called up to be sentenced."

While concurring in the sentiment of Hand, J., quoted, *supra*, that this practice " has its foundation in good sense and common justice," and recommend its observance in all grades of felony, we are disposed to enforce it in capital cases only.

Judgment affirmed.