## Case No. 15,827.

### UNITED STATES v. MOULTON.

[5 Mason, 537.] [1]

Circuit Court, D. Massachusetts. Oct. Term, 1830.

CRIMINAL LAW — LARCENY ON HIGH SEAS—"PERSONAL GOODS"—MONEY.

Money and bank notes and coin are "personal goods," within the meaning of the sixteenth section of the crimes act of 1790, c. 36 [1 Story's Laws, 83; 1 Stat. 112, c. 9], respecting stealing and purloining on the high seas.

[Cited in U. S. v. Canoe, Case No. 14,718.]
[Cited in Com. v. Rand, 7 Metc. (Mass.) 476; State v. Williams, 19 Ala. 15.]

Indictment [against Henry Moulton], founded on the crimes act of 1790, c. 36, § 16 [1 Story's Laws, 83; 1 Stat. 112, c. 9]. It contained several counts  The first alleged, that the defendant, on the high seas, &c., one piece of foreign gold coin, called a sovereign, of the value of $4.60; one other piece of foreign gold coin, called one eighth of a doubloon, of the value of $2.00; one piece of foreign silver coin. called a seven pence half penny, of the value of 12½ cents; twelve pieces of foreign silver coin, called Spanish dollars, each of the value of $1.00; one piece of silver coin of the United States, called a half dollar, of the value of 50 cents; twenty-four pieces of foreign silver coin, called quarters of a dollar, each the value of 25 cents; one other piece of foreign silver coin called a nine-pence, of the value of 12½ cents; one piece of silver coin of the United States, called a quarter of a dollar, and of the value of 25 cents; one bank bill of the New-Haven Bank, of the denomination of five dollars, and of the value of $5.00; one other bank bill of the State Bank of Boston, of the denomination of three dollars, and of the value of $3.00; one other bank bill of the bank of the United States, of the denomination of five dollars, and of the value of $5.00, of the personal goods of one John L. Bowman, did then and there feloniously take and carry away, with intent to steal and purloin, against the peace &c., and the form of the statute &c. The second count alleged the larceny to be of one piece of gold, of the value of &c.; one piece of silver, of the value &c.; enumerating the same coin as in the first count. There were two other counts, one of which was for a larceny of the foreign coin, and the other of the coin of the United States, in the first count mentioned.

1 [Reported by William P. Mason, Esq.]

The defendant pleaded guilty; and having no counsel, Dunlap, Dist. Atty., stated to the court, that there was a question of law open upon the record, how far the coin and bank bills, or either of them, were "personal goods," within the purview of the statute.

Dunlap argued as follows:

The indictment contains four counts. In the first, the defendant is charged with stealing sundry pieces of coin, and three bank bills; in the second, with stealing sundry pieces of gold and silver not alleging them to be coin or money, of a certain alleged value; in the third, with stealing certain pieces of foreign gold and silver coin; and in the fourth, with stealing certain coin of the United States. In the second, third, and fourth counts, the property described is admitted to be the same as the coin described in the first count. The question is, whether these bank bills and this coin, or either of them, are "personal goods" within the true meaning of the statute of 1790, c. 36, § 16 [1 Story's Laws, 83; 1 Stat. 112, c. 9], which prohibits and punishes the offence of taking and carrying away on the high seas, and in certain specified places under the sole and exclusive jurisdiction of the United States, with intent to steal or purloin, the "personal goods of another." It is admitted, that there are various authorities in the English books; decisions made in favorem vitæ, on account of the anxieties of judges administering the bloody code of Great Britain, to find loops to hang doubts on, and which tend to show that bank notes and money are not goods and chattels in penal statutes. Some of the authorities are to be found referred to and examined in the case of the U. S. v. Davis [Case No. 14,930], where it was holden, that a larceny of a promissory note, a chose in action, was not within this act of congress, because not the "personal goods of another." To the authorities of Jac. Law Dict. "Goods," "Chattels," Co. Litt. 118; Com. Dig. "Biens"; 2 East, P. C. 587-948; 2 Russ., Crimes, 1093, —may be added Fost. Crown Law, 79, where it is said, that money is not within the act of 10 & 11 Wm. III., against privately stealing goods in ware-houses, &c.; 2 Strange, 1133; 3 Chit. Cr. Law, 946; Dyer, 5; Leigh's & Grimes' Cases (decided in 1764) 1 Leach, 52, where it was holden, that dollars of Portugal money, and guineas, being money, were not "goods, wares, and merchandise," within the statute of 24 Geo. II. c. 45; Guy's Case (decided in 1782) 1 Leach, 241, where it was holden, that money is not within the meaning of the words "goods and chattels," within the statutes of 3 W. & M. c. 9, § 4; and 5 Anne, c. 31 § 5; and Davidson's Case, contained in a note to Guy's Case to the same effect, decided in 1766; Sadi's Case (decided in 1787) 1 Leach, 468, where it was holden, that bank notes are not "goods and chattels" within the before mentioned statutes of William & Mary and Anne; 6 Johns. 103, where it was holden that a larceny could not, at common law, be committed of a letter; and Perry v. Coates,

9 Mass. 537, where it was holden, that bank notes were not "goods, effects, or credits," within the statute of Massachusetts, respecting foreign attachments. These were the leading authorities and cases in favour of the defendant and in support of the doubt, whether money and bank notes were "personal goods" within a penal statute.

It would be contended on the part of the United States with great confidence, that money and bank notes are "personal goods." Some aid might be derived from recurring to the various definitions of larceny, and it would be found, that the most ancient and modern definitions were the most broad and sensible. In Bract. 3, c. 32, it is said, "quod furtum est secundum leges contractatio rei alienæ fraudulenta, cum animo furando," the word is "rei," the most extensive in its signification; and the only word in the definition which shows, that it must be even personal property is the barbarous word "contracetatio," a word, it is believed, unknown in the Latin language, implying that the thing stolen must be something which can be removed or taken and carried away. In the third Institute, 107, it is true, the definition is more strict, and the offence of larceny is described to be the "felonious and fraudulent taking and carrying away, by any man or woman, of the mere personal goods of another." In 2 East, P. C. c. 16, § 2, the same expression, "mere personal goods," is preserved in the definition of larceny. But in a recent case, Hammon's Case, 2 Leach, 1089, a definition of larceny is given by Grose, J., more conformable to the ancient definition in Bracton,—"the felonious taking of the property of another." Under the word "rei" in Bracton, and the word "property" in the modern definition, it would seem, that money and bank notes were included. Money and bank notes are "personal goods." Things personal, according to 2 Bl. Comm. c. 24, are things moveable, or which may be carried about with and attendant upon a man's person. Certainly, money and bank notes are of this description of property, and indeed money is expressly mentioned in this description, by Blackstone. A chose in action is said to be a thing not in occupation or enjoyment, but merely "a bare right," to be recovered by an action; hence its name. But neither money, nor bank notes good and current, which are the representatives of specie, are choses in action. In form a bank note is a chose in action, and when dishonoured, it becomes the evidence of a right of action, a document for a debt; and the case in 9 Mass. 537, was of dishonoured bank notes.

The suspicion of the necessity of a law-suit to enforce the payment of a bank note would destroy its currency, which is its essence, and gives it its character of money. While therefore it circulates, it is as money, and Lord Mansfield lays it down decidedly, in the case of Miller v. Race, 1 Burrows, 457, 459, that bank notes are "not securities, nor docu-

ments for debts," but "money" and "cash." Money does not fall within the reason of the rule, why choses in action are not considered goods and chattels, so as to be the subject of larceny. The reason of that rule is said to be, because choses in action have no intrinsic value, and so far has this notion been carried, that the intrinsic value of the parchments on which they have been written, and even of the box containing them, has been disregarded. 2 Strange, 1188; 3 Inst. 109; 2 Russ. 1112; 2 East, P. C. 591; Hawkins, bk. 1, c. 25, § 33. But there is an intrinsic value in the metal, of which the money is made, without reference to the "form and pressure," which makes it coin Ancient medals are not now money, yet they were once so (Priestley's Lectures on History, Lect. 6); and in an indictment, would now be described as goods and chattels. Another reason is assigned in Hawkins, in the passage already cited for the rule, that choses in action are not, at common law, the subject of larceny, as goods and chattels, because, being of no intrinsic value, and "of no manner of use to any but the owner, they are not supposed to be so much in danger of being stolen, and therefore need not to be provided for in so strict a manner." Surely, gold and silver coin, and current bank notes, are not within the reason of this rule, and cessante ratione cessat ipsa lex.

Upon a close examination of the cases in which such a strict interpretation has been given to the word "goods," in favorem vitæ, by the English courts in construing penal statutes, it will be found, that it has been on account of the accompanying words, "wares and merchandise," which are not in the act of congress; hence it has been ruled, according to the maxim, "Noscitur ex sociis," that "goods" were to be understood as "ejusdem generis" with "wares and merchandise." Fost. Crown Law, 79. But there has been a later case than any of those cited which make in favour of the defendant, and in effect overruling them. Dean's Case, decided in 1795, and reported in 2 Leach, 693, where it was ruled, that a bank note was within the words "goods, wares, and merchandise," in the statute of 12 Anne, c. 7. In this court also, specie has been held to be "goods, wares, and merchandise," under the penal provisions of the revenue law of March 2, 1799 [1 Stat. 627], and liable to forfeiture when unladen without a regular entry, and a custom-house permit. In Holbrook's Case, 13 Johns. 90, and Richard's Case, 1 Mass. 337, it was held, that bank notes, in an indictment for larceny, might be described as goods and chattels. In the chancery court in England, at first view, apparently different opinions have been entertained upon the question. whether money or bonds ought to be considered as goods. In 1 P. Wms. 267, it was decided, that a devise of all one's goods passes a bond; and in 3 P. Wms. 112, it was decided, that under a devise to one of "household goods and other goods. plate. and stock. within doors

and without," with the residue of the personal estate to another, the ready money and bonds did not pass. But the latter case does not contradict the former, for the decision was upon the ground of the intention of the testator, indicated by the residuary bequest, which would have been inoperative and ineffectual if the bonds and cash had passed by the general words of the first bequest.

In relation to the strict construction of penal statutes, often defeating the intention of the legislature, the favouring of astute quibbling exceptions has been lamented by the greatest judges as a blemish to the administration of justice, and less strict notions on this subject now prevail than anciently. Formerly, it was held under the statute of Edw. VI. c. 2, against stealing horses, that he, who stole but one horse, could not be convicted on that statute, 1 Bl. Comm. 89. But in Hassel's Case, 1 Leach, 1, it was held, that a person who stole but one bank note, was within the statutes 2 Geo. II. c. 25, § 3. and 13 Anne, c. 7, against stealing "bank notes." In the United States, where the laws are not written in blood, and where the people are governed by a mild and merciful system established by themselves, there has been less disposition in the courts than in England, to favour fanciful constructions of penal statutes enabling offenders to elude justice. In Fisher's Case, 17 Mass. 46, an unbroken series of adjudged cases giving a construction to the British statute of 7 Geo. II. c. 22, against the forgery of orders for the delivery of goods, of which the Massachusetts statute of 1804 (chapter 120, § 1), upon which the defendant was indicted, is almost a transcript, was entirely disregarded, and the court say, that the English cases cited for the defendant, though decidedly in point as to the construction of the English statute, admitted to be similar in its language to the Massachusetts statute, were "in favour of life." and sanctioned "a stricter construction" than they thought it necessary to give to the statute of Massachusetts, by which "the life of the offender is not put in jeopardy." To the same effect are the cases of People v. Johnson, 12 Johns. 292, and State v. Holly, 2 Bay. 262. In the celebrated work of that distinguished American jurist, Edward Livingston, the penal code prepared for the state of Louisiana, the rule of the English courts of favourable and unfavourable construction of statutes according to the civil or criminal character of the cause, is abolished, and "all penal laws are to be construed according to the plain import of the words taken in their usual sense." Pen. Code La. bk. 1, c. 1. In the supreme court of the United States, as well as in this court, it has been declared, that though penal laws are to be construed strictly, they are not to be construed so as to defeat the obvious intention of the legislature. [U. S. v. Wiltberger] 5 Wheat. [18 U. S.] 76-94; The Industry [Case No. 7,028].

It is therefore contended, that the defendant's case is within the statute upon which he is indicted, and that the money, as money, and bank bills, are "personal goods," and that at all events, the defendant may be indicted and convicted for stealing the gold and silver money, described in the second count not as coin, but simply as pieces of gold and silver metal, on account of the intrinsic value, for in this count the property is described with all the accuracy the law requires, by number, species, and value. 3 Maule & S. 539, 547, 548.

In conclusion, it may be remarked, that in the latter part of the section, upon which the defendant is indicted, the word "property," which is broad enough to include money and bank notes, is used as of the same force and meaning, as the expression, "personal goods," in the first part of that section.

STORY, Circuit Justice. The 16th section of the crimes act of 1790, c. 36 [1 Story's Laws, 83; 1 Stat. 112], provides, "that if any person &c., upon the high seas, shall take and carry away, with an intent to steal or purloin, the personal goods of another, the person &c. shall, on conviction, be fined not exceeding the fourfold value of the property so stolen," &c. The question is, whether foreign coin, and domestic coin, and bank bills, or any of them, are "personal goods" within the intent of the statute. In the strictest sense of the common law, "personal goods" are moveables belonging to, and the property of, some person, which have an intrinsic value. And even in this, the strictest sense, there cannot be any legal doubt, that the foreign and domestic coins, enumerated in the indictment, are "personal goods," for they have an intrinsic value. In a more large and liberal sense, the term "goods" may embrace moveables not having any intrinsic value, such as choses in action and monied securities, notes, bonds, and other debts, and evidences of debts. Thus, a bequest by a party of all his goods and chattels, without any other restrictive or explanatory words, would carry choses in action, bonds, &c., as well as money and other valuable moveables. And this upon the plain import of the words, as expressive of the intention of the testator. Anon. 1 P. Wms. 267. But in construing penal statutes, courts of law have often, in favour of the citizen, interpreted the word "goods" in its strictest sense; and, indeed, in capital felonies, have sometimes, in favour of life, adopted a far more limited meaning, savouring too often of unseemly nicety, if not of extravagant refinement.

The words of the present enactment approach very near to the definition of larceny at the common law. The usual definition of that offence is, the felonious and fraudulent taking and carrying away by any person of the mere personal goods of another (4 Bl. Comm. 229; 3 Inst. 107; 2 East. P. C. 553; 2 Russ. Crimes, 1032); and according to Brac-

ton (liber 3, c. 32), "furtum est secundum leges contractatio rei alienæ fraudulenta, cum animo furandi, invito illo domino cujus res illa fuerit," answering very nearly to the description given by a late learned judge, that it is the felonious taking of the property of another, without his consent and against his will, with intent to convert it to the use of the taker. Hammon's Case, 2 Leach, 1089; 2 Russ. Crimes, 1032, 1033; 2 East, P. C. 553; Curwood's Hawk. bk. 1, c. 19, and note, Id. In the above definition, "personal goods" has always been construed to mean such moveables only, as have an intrinsic value; and therefore as not comprehending mere choses in action. The common law did not deem the latter the subject of larceny, because they were not of any intrinsic value, and did not import any property in possession of the person, from whom they are taken. 4 Bl. Comm. 234; 2 Russ. Crimes, 1112; 2 East, P. C. 597; Anon., Dyer 5; Rex v. Morris, 2 Leach, 525; 3 Inst. 107, 109; Co. Litt. 118b; Calye's Case, 8 Coke, 33a. It was upon this ground that this court thought itself constrained to hold, in the case of U. S. v. Davis [Case No. 14,930], that mere choses in action (such as a private promissory note for money,) were not personal goods within the purview of the act of 1790. It was presumed, that as the legislature made use of language importing, almost in the very words of the common law, a definition of larceny, such "personal goods" only, as might be deemed property in possession at the common law, were within the contemplation of the act. But to carry the exception farther, and exclude money and coin of foreign or domestic coinage, which are in the strictest sense "personal goods," having an intrinsic value, would, in our judgment, be to indulge a latitude of construction not properly belonging to judicial tribunals. The natural sense of the terms of the act ought to be adopted, unless the context affords clear proof of some more restrictive application of them. Very little light can be gathered from the decisions of the English courts, upon the construction of their own statutes, to assist us in this part of the inquiry. In the first place, as has been already intimated, courts of law, in cases of capital felonies, have been very astute, perhaps unjustifiably so, to escape from the literal meaning of the words, and to create conjectural exceptions. Such a proceeding, if it may be properly allowed in cases affecting life, is wholly inapplicable to cases of mere misdemeanors, and to other cases not capital. There is much masculine sense in the distinction taken on this subject by the court, in the case of the Com. v. Fisher, 17 Mass. 46. In the next place, there is not a single decision in the English books to our knowledge, which, in point of authority, ought to govern in the construction of the present act; for, in no English statute are the objects or the language substantially the same with ours. There are other accompanying words, or other clauses in the context, explan-

atory of the legislative intent, which might well authorize, if they did not absolutely require, the court to adopt the narrower construction, in favorem vitæ. It will be sufficient to cite a few of the more prominent cases in order to establish this position. In Rex v. Leigh, 1 Leach, 52, it was held by the court, that stealing money was not a capital larceny within the statute of 24 Geo. II. c. 45. The words of that statute are, "all and every person &c., who shall feloniously steal any goods, wares, or merchandises, of the value of 40 shillings, in any ship, barge, &c. upon any navigable river, or in any port, &c. or upon any wharf or quay, adjacent to such river or port." The court thought, that the construction ought to be confined to such goods and merchandises as are usually lodged in ships, or on wharfs and quays. Reliance was also placed upon the accompanying words, "wares and merchandises," (noscitur a sociis,) and upon the clause as to wharfs and quays; and very properly, for it was difficult to presume, that the legislature had a different intent, as to goods in ships, and on wharfs; and money is not usually lodged on wharfs. Fost. Crown Law, 79; 2 East, P. C. 647.

In the act of 1790, there are no such accompanying words; "personal goods" stand alone in the text, without any qualifying clause. In Rex v. Guy, 1 Leach, 241, which was an indictment for receiving two guineas, which were stolen, it was held, that under the statutes of 3 Woodb. & M. c. 9, § 4, and 5 Anne, c. 31, § 5, there cannot be an accessory after the fact for receiving money. The statute of W. & M., c. 9, provides, that "if any person &c. shall buy or receive any goods or chattels, that shall be feloniously taken or stolen from any other person, knowing the same to be stolen, he &c. shall be taken and deemed an accessory &c. to such felony, after the fact." The statute of 5 Anne, c. 31, provides, that "if any person &c. shall receive or buy any goods or chattels, that shall be feloniously taken or stolen &c.," in the same general terms, as that of W. & M. 2 East, P. C. 743, 744. The judges, in the construction of these statutes, seem uniformly to have held, that the words "goods and chattels" mean such goods and chattels, whereof larceny could be committed at the common law, upon the plain ground, that the legislature did not intend to create any accessorial offence, except in cases where there was a principal offence already committed. It is certain, that guineas are "goods and chattels," in the common law sense of the terms, and as such, subjects of larceny; and it is somewhat difficult, therefore, to account for the decision in Rex v. Guy, upon the principle above stated. Mr. East supposes the decision to have proceeded upon the ground, that the statutes extended only to the receipt of such kind of goods and chattels, the property in which, being generally, and in its own nature, capable of being ascertained by outward marks

and circumstances, made it more difficult for the thief to dispose of them without the aid of a receiver, by whom he was encouraged and protected, whereas money has no such distinguishing marks. 2 East, P. C. 748; 2 Russ. Crimes, 1307, 1308. This ground seems wholly unsatisfactory; for if larceny might be of money at the common law, which cannot be doubted (Hawk. P. C. bk. 1, c. 32, § 35; 2 Bl. Comm. 387), there seems no just reason, why the accessorial offence should not, if the words of the acts did not convey any restriction, be held co-extensive with the principal offence. The ground, however, such as it is, is inapplicable to the principal offence, and is limited to receivers. In Rex v. Morris, 2 Leach, 525, it was decided, that the receiver of bank notes, knowing them to be stolen, was not punishable as an accessory under the statute of 3 W. & M. c. 9, and 5 Anne, c. 31, notwithstanding the express declaration in the statute of 2 Geo. II. c. 25 (2 East, P. C. 598), that if any person shall steal any bank notes, &c. "he shall be deemed guilty of felony, of the same nature and in the same degree, &c. as if the offender had stolen or taken any other goods of like value, with the money due, &c." upon the ground, that the latter statute did not reach receivers of bank notes as accessories under the former statutes, but applied only to the principal offender in the larceny. But this case has been since shaken by the decision in Rex v. Dean, 2 Leach, 693. See 2 East, P. C. 646, 749; 2 Russ. Crimes, 883, and note; Id. 1307, 1308. These are the most material cases, and they fall far short of establishing the proposition, that "personal goods" in the act of 1790, do not include coin, or money. In our judgment, it would be an unjustifiable departure from the language of the legislature to hold, that coin and money are not included within the prohibition. They are equally within the terms and the reason of the enactment.

In respect to the bank bills included in the indictment, there is much more difficulty. I agree to the doctrine of Lord Mansfield, in Miller v. Race, 1 Burrows, 457, that bank notes are usually treated in the common business of life as money and cash, and not as goods and chattels, or securities for money. But that case turned upon very different considerations from those, which govern in the construction of penal statutes. There the only point was, whether bank notes, being used as currency, the owner could, in case they were stolen, recover them against a subsequent bona fide holder. The court adjudged, that he could not, upon sound principles of public policy. Now, there is strong reason to believe, that bank notes were not, before the statute of 2 Geo. II. c. 25, held to be "goods or chattels," within the meaning of the statutes of W. & M., and Anne, above referred to. This is not decisive; but it affords a presumption, that in the opinion of parliament, it was necessary to punish the larceny of bank notes by a spe-

cific description, eo nomine. Technically speaking, bank bills are merely promissory notes for the payment of money; and they may be declared on as such. Young v. Adams, 6 Mass. 182; Perry v. Coates, 9 Mass. 537. They are not in all cases treated as money, though in most instances, for the purposes of civil justice, they are so. In Com. v. Carey, 2 Pick. 47, the court declared, that a bank note might, in an indictment for theft, be described as a promissory note of the bank; and in this respect it was not distinguished from other private choses in action. In Spangler v. Com., 3 Bin. 533, the court seem to have treated bank notes as no otherwise the subjects of larceny than as statutable enactments had made them so. And Yeates, J., on that occasion said, that bank and promissory notes are mere choses in action. But in Com. v. Boyer, 1 Bin. 201, upon an indictment for larceny of bank notes, the court thought, that a description of them as the "goods and chattels" of the true owner was sufficient. The same doctrine is implied in Com. v. Richards, 1 Mass. 337. In People v. Holbrook. 13 Johns. 90, the point was directly decided; and it was held, that in such a case, "goods and chattels" implied property or ownership. But in each of these cases there was a state statute, which made the larceny of bank notes a substantive offence; and in two of them, the state statute was to the same effect as that of 2 Geo. II. c. 25; and it is not impossible, that these considerations had an influence upon the decision.

The doctrine in New York has gone farther; and bank notes have been held liable to be taken in execution upon a fieri facias, as money. Handy v. Dobbin, 12 Johns. 220. This decision would be entitled to very great weight, if it stood wholly uncontradicted. But in Massachusetts, an opposite doctrine has been maintained. Perry v. Coates, 9 Mass. 537. Still, there is this material difference between bank notes and other promissory notes, that the former in the common transactions of life are treated as money, and circulate as currency, and therefore have, in themselves, an intrinsic value in the common estimation of mankind. They are at least as much within the policy of the act of 1790 (chapter 30), and as important to be guarded against larceny as any personal property whatsoever. Under such circumstances, the court has been anxious to ascertain, whether bank bills have been in any cases of a penal nature treated differently from any other choses in action; and especially, whether in cases of statutable larcenies, they have been distinguished from other negotiable notes. In Rex v. Dean, 2 Leach, 693, the indictment was for stealing a bank note of the value of $20, the property of J. M., in his dwelling house. The statute of 12 Anne. c. 7. § 1. makes stealing "any money, goods, chattels, wares or merchandises of the value of 40 shillings," a

capital offence. It was objected, that bank notes were not "money, goods, chattels, wares or merchandises," within the purview of the statute. But the judges were unanimously of opinion, that they were; for that the statute was intended to protect every species of property. But the statute of 2 Geo. II. c. 25 (2 East, P. C. 597, 598), already referred to, doubtless had great influence in the decision, since it put the stealing of bank notes upon the same footing as to nature, degree, and punishment, as the stealing of any other goods; though this ground does not expressly appear in the opinion of the judges. In Rex v. Clarke, 2 Leach (4th Ed.) 1036, the indictment was for larceny of certain bankers' notes, and for certain pieces of paper, of the value, &c. each stamped, and re-issuable, as bankers' notes, payable to the bearer. It appeared in evidence, that the notes had been taken up by the bankers' agents, and were stolen from a parcel in their transit to the bankers for the purpose of being re-issued. The objection was, that the notes, having been paid, were of no value, and consequently, not the subject of larceny. The prisoner was convicted; and the judges held, that he was rightly convicted. 2 East, P. C. 646, 749; 2 Russ. Crimes, 984, 1307, 1308; Rex v. Hammon, 2 Leach, C. C. (4th Ed.) 1089. Mr. Justice Grose, in delivering their opinion, said: "The question submitted in this case to the consideration of the judges was, whether the paper and stamps are, under the circumstances of the case, the subjects of larceny at the common law; or in other terms, whether they are the property of, and of any value to, J. J. and A. L., (the bankers,) who were unquestionably the owners. These gentlemen have paid for the paper, the printing, and the stamps of these papers, which once existed both in character and value as promissory notes. Their character and value as promissory notes were certainly extinct at the time they were stolen. But even in this state, they bore about them a capability of being legally restored to their former character and pristine value. It was a capability, in which these owners had a special interest and property. The act of re-issuing them would have immediately manifested their value, as papers, &c. In what sense or meaning, therefore, can it be said, that these stamped papers were not the valuable property of their owners? They were indeed only of value to those owners; but it is enough, that they were of value to them. Their value to the rest of the world is immaterial. The judges are, therefore, of opinion, that to the extent of the price of the paper, the printing, and the stamps, they were valuable property belonging to the prosecutors." See, also, Id., 2 Russ. Crimes (2d Eng. Ed. 1828) 147, and note. It cannot escape observation, how strongly every word of this opinion applies to the case of bank notes, which are outstanding; and it is to be con-

sidered, that the question on the counts, to which alone the opinion applies, was, as to the larceny at the common law. If bankers' notes payable to bearer were of the value of the stamps, and paper, and printing, because re-issuable, and therefore to be deemed valuable property, the subject of larceny, a fortiori, bank notes, for which the holder must be presumed to have given value, and which have in his hands a present value as currency, must be deemed such. There is, indeed, such a persuasive good sense in the opinion, that one feels very great difficulty in escaping from its conclusive effect in cases of the larceny of other mere choses in action. Rex v. Ransom, 2 Leach, 1090, is not so strong in its application. But Rex v. Vyse, 1 Moody, Crown Cas. 218, not only affirmed the doctrine in Rex v. Clarke, but proceeded a step farther. It was there held, that bankers' notes, so paid and re-issuable, were not only subjects of larceny at common law, but might be described in the indictment, (as in that case they in fact were described,) as "goods and chattels" of the owners.

These cases distinctly show, that in modern times, courts of justice in penal, and even in capital cases, are disposed to look at the real nature of the things stolen, and though they are in form choses in action, yet, if possessing a real value in possession, to hold them subjects of larceny. The choses in action, which were held originally not to be the subjects of larceny at the common law, were those, which had no intrinsic value, (bank notes were not then in existence,) and did not import any property in possession of the person. Can it be truly said, that bank notes, payable to bearer, and passing as currency, have no present value in possession? The present indictment has described them as of the value, which they purport on their face to promise to pay. They pass as money; they are received as money. In courts of justice, they are treated as money. On a declaration for money had and received, proof, that the defendant received bank notes for the use of the plaintiff, would be sufficient to maintain the action. They have a present value in possession, not as a mere promise to pay money, but as money of an immediate, positive, exchangeable value. It seems to us, therefore, that it would be an over refinement to hold, that they are not "personal goods" within the sense of the act of 1790. They are far better entitled to the appellation of "goods and chattels," than the paid bankers' notes in Clarke's and Vyse's Cases above mentioned.

Besides, the bank notes of the bank of the United States, by the express provisions of the charter (of which, as a public act, we are bound judicially to take notice,) are receivable in payments to the United States; and they have, therefore, a present value,

for such purposes, as cash. The same cannot be said of the other bank notes, stated in the indictment. But we are still entitled to consider them as of the present value of their respective denominations, as they are so alleged in the indictment.

If this were an indictment at common law, we might, as to the latter bank notes, have some hesitation, though the Cases of Clarke and Vyse would certainly go far to remove any technical scruples. One reason, why, at the common law, bonds and other choses in action were not deemed subjects of larceny, was, that they could not be used as property in possession by the thief, but were suable only by the owner. But bank notes, payable to bearer, are not now liable to such a consideration; for they are of present worth and value to the holder, and pass by delivery. We are now construing a public statute; and if we can perceive, that the words of the statute, in common and legal understanding, are large enough to comprehend bank notes, and that the policy of the statute applies to them with at least the same force, that it does to "personal goods" in the most restrictive sense of the terms, we are bound to give that interpretation, which carries the words to the extent of the mischief. We may say, as the judges did in Dean's Case, 2 Leach, 693, "that the statute was intended to protect every species of property," which may be deemed valuable property in possession. In the case of Rex v. Robinson, Id. 869, the judges held, that bank notes were a valuable thing under the statute of 9 Geo. I. c. 22, respecting threatening letters, which uses the words "money, venison, or other valuable thing." See, also, Rex v. Aslett, 2 Leach (4th Ed.) 958; 2 East, P. C. 1110; 2 Russ. Crimes, 1830, &c. But a private promissory note has been held not to be so. Rex v. Major, 2 Leach, 894; 2 East, P. C. 118. A distinction is here manifestly taken between choses in action, which are mere evidences of a debt, and those, which have a present value as currency. It can scarcely be doubted, that under the statute of 30 Geo. II. c. 24, respecting false pretenses, bank notes must have been deemed "money, goods, wares, or merchandises," although there is no case, now recollected, which turned on that point. See 2 East, P. C. 832.

Upon the whole, the court are of opinion, that the bank notes stated in the indictment, equally with the coin, are personal goods within the act of 1790, and therefore sentence must be passed upon the prisoner accordingly.