The opinion of the Court was delivered by
Withers, J.
By various counts in the same indictment the prisoner was charged with the felony of larceny, and also with receiving stolen goods, knowing them to be stolen, the latter offence being laid, in different counts, contra formam statuti, and also in the last as at Common Law. At a former term he had *489 appeared, was represented by counsel, and the cause was postponed to the late term of General Sessions. He claimed at the latter the right of traverse; it was denied, and error is assigned therein, before this Court.
The prisoner was arraigned upon the entire indictment, and felony being charged, he could not be entitled to traverse. Allowing this to be conceded, the argument then is — that, the indictment containing charges of felony and misdemeanor, and the conviction being for the latter, the prisoner has thus been denied the right of traverse as to the latter, which is urged as a strong reason to prove, likewise, that the distinct offences alleged ought not to have been united in the same record — and that the indictment ought to have been quashed, or that judgment ought now to be arrested. These are distinct and further questions in the case, and will be considered in order.
The right of traverse, as to the misdemeanor charged, was not necessarily excluded, on account of the joinder; for if, by an order that the prosecutor elect upon what count or counts the trial should proceed, or by other means, the issue had been reduced to the counts for misdemeanor, we are of opinion that the motion to traverse, at the late term, could not possibly have prevailed. Without exploring the etymology of traverse, and allowing it to import a denial of some matter of fact alleged in a pleading at law, in Equity, or in a criminal prosecution, the benefit of it to a defendant, in an indictment, is the postponement of a trial to the next term of the Court. This advantage the prisoner, Posey, had, and, therefore, in this respect, there can be no just ground of complaint. In 4 Com., 351, Blackstone says: “It is not customary, nor agreeable to the general course of proceedings (unless by consent of parties, or where the defendant is actually in jail) to try persons indicted of smaller misdemeanors, at the same Court in which they have pleaded not guilty, or traversed the indictment. But they usually give security to the Court to appear at the next assizes or session, and then and there to try the traverse, giving notice to the prosecutor of the same.” Whether this indulgence in favor *490 of smaller offences, arose from the circumstance that in such cases the accused had only the resort of common process to procure witnesses, whereas, in graver cases he had the means of recognizance, and the policy of bringing to speedy trial great offenders, it is needless to inquire. To show that notice of the indictment found, at a reasonable time before the trial is had, is of the essence of a traverse permitted in misdemeanors, it is only necessary to observe, that by statutes in England in the reigns of George the 3rd, and George the 4th, twenty days custody of the defendant, by the bailiff, or by bail, before the session at which the indictment is found, or notice, (where he has not been arrested,) twenty days before a subsequent session, that an indictment has been found, subjects the party to trial at such session, except in a single instance touching highways; Stephens’ Comm., 4 vol., p. 420. So much upon the third and fifth grounds for arrest of judgment.
The motion in arrest of judgment is urged further — because felony and misdemeanor have been joined, being several and distinct offences to which different punishments are appropriate, and so the indictment is multifarious, inconsistent, and contradictory ; and this position embraces the first, second and seventh grounds, stated in the brief.
It has already appeared that the counts joined were for larceny and receiving stolen goods. To vindicate this, as no ground for arresting the judgment, it is sufficient to refer to one case, the State vs. Boise and Stuke, 1 McM., 189. In that case it was said that it might properly be left “to the direction (discretion) of the presiding Judge, in all cases, so to regulate the trial that the party shall not be prejudiced by the trial.” It is obvious that this can be done by requiring the prosecutor to elect upon what count or counts the prisoner shall be tried. Although in England it has been adopted as a rule of practice (Rex vs. Galloway, et al., Rex vs. Madden, 1 Moody Crown Cases, 234 — 277,) that the clerk of the assizes should not join such offences as are contained in this indictment, yet the Court held in the King vs. Galloway, that it was not objectionable in point *491 of law, and divided on the question whether the prosecutor should be put to an election.
Whatever other difficulties, or inconveniences, may arise out of the joinder, it is not matter for arrest of judgment; vide State vs. Tidwell and Lawhorn, 5 Strob., 1.
The sixth ground for arrest of judgment is obviated by the report.
The fourth is — i! Because it does not appear from the verdict, upon which count the finding rests, as the indictment contains counts for receiving stolen goods, both under the statute and at Common Law.”
This position refers to the fifth and sixth counts of the indictment, which are in fact those only, among the whole, to which the verdict can refer, or to w^ich the evidence pertained, or on which the trial turned.
In the fifth, the charge was receiving certain bank-bills from a slave, Jenny, against the statute, &c. The sixth count charged the same offence as at Common Law, touching gloves, handkerchief, purse, &e. The verdict was, “we find the prisoner guilty of receiving stolen goods, knowing them to be stolen.”
Suppose it be allowed, that it is uncertain to which of the two counts this verdict refers, is that cause to arrest the judgment 1
Counts at Common Law, and under a statute, for the same offence, may be joined; and although one be good and the other bad, and there be a verdict equally applicable to both, yet the judgment need not be arrested therefor. A new trial may be granted, where that appears necessary to ascertain the sense of the jury — and this is equally true where both counts are good, but the punishments are different. That was done, but the judgment was not arrested in the case of the State vs. Anderson, 1 Strob., 455. Upon this question we may also refer to the case of the State vs. Tidwell & Lawhorn; where motions in arrest, and for a new trial were both refused, upon a verdict applicable to two counts, which imported different degrees of pun *492 ishment, though of the same nature. To arrest the judgment, the matter must appear on the record. Such matter does not appear on the face of the indictment, and if it arise from the inexactness or incompleteness of the verdict, as a guide to the measure of punishment, that would be cause only for new trial.
A new trial is not claimed on this ground, as will appear on adverting to the grounds for it, set forth in the brief; and in such a case as this, where the evidence was ample to sustain both the fifth and sixth counts, and convinced the jury; and where the prisoner, not able to raise a doubt of his guilt, resorts to his right of preferring every possible technical exception, he might well be held to abide that rule of precision which he adopts. But we are disposed to be less exacting, and will consider this ground, arising out of the verdict, as pertinent to the motion for a new trial. It*is urged, that the word “ goods,” in the verdict, necessarily connects the finding with the sixth count exclusively — forasmuch as bank-bills alone are comprised in the fifth, and personal chattels alone in the sixth, and bank-bills are not goods — therefore, that the sixth count being null, because it charges an offence at Common Law, which, since the statutory regulations, does not exist at Common Law, the verdict is also null for finding what don’t exist.
The words of the Act of 1829 (6 Stat., 393) speak of a receiver of “ any goods and chattels, or other property of which larceny may be committed.” Of bank-bills larceny may be committed ; whether at Common Law it is immaterial to inquire, for by former statutes they were certainly subjects of larceny when the Legislature spoke in that of 1829. By this last, goods, chattels, and bank-bills — every subject of larceny — were put on the same footing. For the purposes of the offence of unlawfully receiving them from a thief, it is fair to hold that goods or chattels were the nomen generalissimum, and whatever was the subject of larceny was classed, for brevity’s sake, in that category, and so the general term must include the particulars. Without expanding observations upon this subject, or exploring many books — without accounting for the nice distinctions in favorem *493 vitce, and what Justice Story calls “ extravagant refinement” of earlier English cases upon the construction of penal statutes, which excluded from the range of goods and chattels, coins, as well as bank notes, it will be enough to refer to the case of the United States vs. Moulton, 5 Mason, 537, for an authority to show, very satisfactorily, that in a case quite pertinent to the present question, bank-bills are “goods.” It was held, in that case, that a party was guilty of violating the Act of Congress punishing the taking and carrying away, with intent to steal or purloin, the “personal goods of another,” who did that act touching a bank-bill. The learning and sound argument of that case supersedes the occasion for further observation as to this matter.
So this verdict. does not, ex vi termini, relate to the sixth count exclusively, but as well to the fifth. We have then reached this position: The prisoner is convicted of “ receiving stolen goods, knowing them to be stolen.” One species charged to have been so received is bank-bills, and that is charged contra formam stattiti. Another species consists of purse, handkerchief, &c., charged in another count, to have been received against the Common Law. The verdict is large enough, fit in words, and founded on proof amply sufficient to cover both. The punishment appropriate to the conviction on one count, if admitted to be greater in degree by the terms of the statute under which it is framed, includes, nevertheless, that fit for the other, as prescribed by Common Law. Where, then, is the difficulty, in understanding the verdict as finding guilty on the fifth count, even though it does the same on the sixth, and even though the sixth be null and void?
We may now regard this indictment as containing but two counts, the fifth and the sixth; the first charging the offence under the Act of 1829 ; the last, as at Common Law. Now it is not the case of distinct offences charged in two counts, whether arising out of the same or different transactions, but of both which the party cannot be guilty; with evidence pertaining to either, and a general verdict pointing to neither with ade *494 quate certainty. It is, rather, a case of the various statements of the same offence, committed at the same time, arising out of the same act, and alleged diversely only in separating, into different counts, articles of personalty, all of which, both the evidence and the verdict showed, were unlawfully received by the prisoner; or, at most, two offences, consistent, of both which the party might be, was found to be, and therefore was, guilty. There is a great difference between a verdict that includes the one or the other of two counts, and it is uncertain which ; between a verdict which does not find all that is essential of what is charged in a count; and a verdict that finds all of two counts. This last we consider the verdict before us to be; which will be plainer if we keep in mind that the indictment contains (and such is now practically true) only the fifth and sixth counts. We have established that it finds the guilty receiving of the goods and chattels charged in both counts. What does it matter, whether the sixth count be good or bad, or what kind and degree of punishment be appropriate to it? So long as the fifth count be found, and be sound in law, the prisoner is well convicted under it. In the case of Anderson, however, two distinct misdemeanors were charged; the evidence was applicable to either; the punishment different in degree and kind. One count was bad; it lacked the venue; the other it was doubtful whether the evidence supported, for Judge Evans questions whether Anderson was a vendor in contemplation of the Act of 1834; nor could he be guilty of giving and of selling the same liquor, to the same person, at the same time. Yet who can doubt, that Posey might be guilty of perpetrating, at the same time, and by the same act, or at different times, and by different acts, all that is charged in both the fifth, and sixth counts, and that in very truth he was so guilty ? Thus, we may properly regard this as a case in which there is a good verdict on the fifth count, not in the least vitiated because it may include the sixth also, even though that may be bad.
Thus far the case has been treated upon the assumption, that now, as in 1827, when Wright's case (4 McC., 358) was deter *495 mined, no indictment will lie, as at Common Law, for receiving stolen goods, and that if it would, the punishment would be different from that prescribed by the Act of 1829, (6 Stat., 39B.)
Neither proposition is quite clear. Since the Act referred to, it is not easy to see how the Common Law is superseded in any particular, unless it be by some change of penalty. Under the statutes of William & Mary, and Ann, the offence was made a felony, by reason of treating the offender as accessory, after the fact, of the thief, merely by receiving the goods, with the scienter ; whereas, at Common Law he did not bear that character, unless he received the thief, but was held, for receiving the goods, amenable for misdemeanor. And though by the statute of Ann he might be indicted, as for a misdemeanor, in certain circumstances, where, ordinarily and by Common Law, an accessory could not, yet it was held in Wright’s case, and in England, that he still bore the character of an accessory to a felon, and hence, upon general principles, the lower grade of Common Law offence was merged. Otherwise Chief Justice Holt, in the leading case, and that on which Wright’s case proceeded, to wit: Rex vs. Cross & wife, 1 Ld. Raymond, 711, feared that the receiver might be doubly punished: that is, under the statute of William & Mary, as well as at Common Law.
But'our Act of 1829 declares that the receiver “ shall be held and deemed guilty of, and may be prosecuted for, a misdemeanor ; ” affixing the penalty of imprisonment and whipping. It may be very plausibly argued that the offence is now, exclusively and substantially, a misdemeanor, not in nature of one ; the prosecution is to be for, not as for, or after the manner of, a misdemeanor. The Act settled the doubt created by Wright’s case, as to liability for receiving from a negro or slave, being the thief, and removed all difficulties- arising from the idea of the relation of accessory as to offences that admitted, and those that did not admit, such relation. Thus it would seem, that the sole legal reason which operated to merge the Common Law offence, has ceased, and with it should cease the rule which it begat.
*496 Nor would such conclusion in any manner undermine the foundation that supported the case of Wright. As to the punishment of this offence at Common Law, it is not easy to ascertain whether or not it extended to whipping or pillory. Foster, at page 373, informs us as follows : “ Before the statute of king William, receivers, unless they likewise received and harbored the thief, were guilty of a bare misdemeanor, for which they were liable to fine and imprisonment, or other corporalpunishment.” Says Mr. Emlyn, in the preface to the second edition of State Trials: “ As to smaller crimes and misdemeanors, they are differenced with such a variety of extenuating or aggravating circumstances, that the law has not, nor indeed could affix to each, a certain and determinate penalty; this is left to the discretion and prudence of the Judge, who may punish it either with fine or imprisonment, pillory or whipping, as he shall think the nature of the case deserves; ” “ if the offender be not able to pay such fine as his offence deserves, he must then submit to a corporal punishment in lieu of it, according to the old rule, Qui non habetin crumena, luat in cute; ” or as Coke has it, 2 Inst. ? 173, Qui non habet in cere, luat in corpore.
This is enough to show that it is not quite certain there is any specific difference in the punishment that might fall on receivers, at Common Law, and that prescribed by the Act of 1829. In both instances it is corporal punishment, to say the least — and so of the same nature, (vide State vs. Tidwell, et al., 5 Strob., 1,) and we have seen there seems to be respectable authority for saying, that at Common Law the corporal infliction was not necessarily to be by imprisonment only, but might be otherwise. Whoever, therefore, is satisfied, that the sixth count may stand, and that the punishment which would follow a conviction under it was either the same precisely, or like in nature, with that now affixed by statute, will see all objections to this conviction removed, which have been hereinbefore discussed, as arising from the joinder of counts and the terms of the verdict.
*497 A matter somewhat pressed in argument, but not distinctly disclosed in the grounds of appeal, is founded upon the imputation of duplicity in the fifth and sixth counts, in that, it is alleged, conjunctively, that the prisoner did buy and receive, whereas the words are “ buy or receive,” in the statute, and it thereby creates distinct offences. It is very clear that this position is not well founded, for to receive, barely, may be no offence, since one may receive goods, knowing them to be stolen, with a view to restore them, or preserve them for an unknown owner. To buy, with the guilty knowledge, does include receiving, but it is not true vice versa. This objection is well enough met in the latter part of the very paragraph of Hawkins, cited to sustain it, to wit: 2 Haw., ch. 25, sec. 108. It is quite enough to cite to this point, the State vs. McCoy, 2 Spears, 711; the State vs. Johnson, 3 Hill, 1; and the State vs. Meyer, 1 Spears, 305.
The motions in arrest of judgment, and for a new trial, are dismissed
O’Neall, Wardlaw, Whither and Glover, JJ., concurred.

Motions dismissed.