## Supreme Court.—General Term—Fourth Department.

*April,* 1882.

## BORK *v.* PEOPLE.

(Affirmed, 1 *N. Y. Crim. Rep.* 379.)

PECULATION.—CONVERSION.—THE PECULATION ACT, L. 1875, CH. 19.—INDICTMENT.—EVIDENCE.

Bonds held for a city by the comptroller thereof, for the purpose of selling them for said city, are held for and on behalf of a "public or governmental interest" by a municipal or public corporation. They

are the property of the city, and the fraudulent receiving, or disposing of them, the obtaining, converting or paying out thereof is a crime within the intent and meaning of the statute providing for the punishment of peculation. L. 1875, ch. 19.

The resolutions of the Common Council authorizing the issue of the bonds and the statutes under which the bonds were issued, are properly received in evidence to establish the validity of the bonds and incidentally their value, which depends on the authority upon which they were issued.

Writ of certiorari to review the conviction of the defendant, Joseph Bork, in the court of Oyer and Terminer of Erie County, Hon. CHARLES DANIELS presiding, June 13, 1881 (on an indictment found November, 1877) of peculation by fraudulently converting, obtaining, and disposing of certain bonds of the city of Buffalo.

The defendant was convicted under what is known as the "Tweed Act"—"An Act to provide more effectually for the punishment of peculation and other wrongs affecting public moneys and rights of property." L. 1875, ch. 19.

The indictment under which the defendant was convicted, after averring in the first count the incorporation of the city of Buffalo, and that during the time mentioned in the indictment Thomas R. Clinton was comptroller of the city, and as such held for and on behalf of the city two hundred unpaid and unsatisfied bonds, known as City and County Hall bonds, of the denomination and value of $1000 each, the "credits, funds and property of the city," proceeds in the charging part to aver and charge that on the 1st day of October, 1875, at Buffalo, the defendant, Bork, "with intent to defraud the said city of Buffalo, etc., then and there feloniously, wickedly and wrongfully did obtain and receive from Thomas R. Clinton, such officer as aforesaid etc., and did convert to this said Joseph Bork's own use, and dispose of one hundred bonds of the city of Buffalo, etc., issued by the said city of Buffalo, etc., of the kind known as City and County Hall bonds, in and by each of which bonds the said city of Buffalo promised and agreed to pay the sum of one thousand dollars, with interest thereon, each being dated, etc., and of the denomination and value of one thousand dollars

each, a further and more particular and accurate description of which is to the jurors unknown, etc., of the funds, credits and property of the said city of Buffalo, etc., then and there so as aforesaid, held by said Thomas R. Clinton, as such officer, etc., officially for and on behalf of said city, contrary to the form of the statute," etc.

The second and third counts are founded upon the same transaction set forth in the first count, and need not be particularly noticed.

It was found on the trial that Bork was treasurer of the city of Buffalo from January 1, 1872, to January 1, 1876, having been elected treasurer for two successive terms of two years each. Some time in December, 1875, it was discovered that Bork was a defaulter to the city, and an investigation was instituted, in the course of which it was ascertained that this defalcation amounted to about the sum of $475,000.

When the defalcation commenced does not definitely appear, but it was shown that it was as early as October, 1873. The money misappropriated by Bork was derived from taxes, the sale of city bonds, and other sources of municipal revenue, and was to a great extent turned over or deposited by him with the firm of Lyon & Co., a firm engaged in the real estate and banking business in the city of Buffalo, of which Bork was a member, and was used in their business. The firm of Lyon & Co. had no capital, and when the defalcation of Bork was discovered it was found to be insolvent.

The material facts in respect to the City and County Hall bonds mentioned in the indictment and their disposition by Bork are as follows:—By the act (chap. 680, Laws of 1871, sec. 14), it was made the duty of the mayor and comptroller of the city of Buffalo to borrow upon the faith and credit of the city the money necessary to pay its proportion of the expense of erecting a public building in the city of Buffalo, to be known as the City and County Hall, for the use of the county of Erie and the city of Buffalo, and to issue interest-bearing bonds of the city therefor, payable not more than fifty years nor less than twenty years from their date, which bonds were to be registered in the office of the comptroller, and to be negotiated by the mayor and comptroller as fast as the moneys should be required

by the building commissioners appointed by the act, on the best attainable terms, but at not less than their par value, the moneys received therefor to be deposited with the treasurer of the city, who was directed to keep a separate account thereof and to pay therefrom, upon the order of said commissioners, from time to time, the amount required to pay the city's proportion of the expenditures authorized by the act.

By resolution of the Common Council of the city, adopted August 23, 1875, approved by the mayor, the mayor and comptroller were authorized and directed to issue the bonds of the city to the amount of $125,000, under the act of 1871, the bonds to bear date September 1, 1875, and to negotiate the bonds and deposit the proceeds with the city treasurer to the credit of the City and County Hall building fund. The mayor and comptroller thereupon caused to be printed one hundred and twenty-five bonds of $1,000 each, with interest coupons attached, dated September 1, 1875, purporting to be bonds of the city of Buffalo, authorized by chapter 680 of the Laws of 1871, payable to bearer, the principal at thirty-two years. The bonds were duly executed by the mayor and comptroller under the seal of the city, and deposited with the comptroller. The comptroller, on or about the 20th day of September, 1875, delivered to Bork seventy-five of the bonds, to be sold by him on account of the city. Bork sent them through a bank in Buffalo to a bank in the city of New York, subject to his order. He went to New York the same day, received the bonds from the bank there, and put them in the hands of one Moran, a broker in that city, the correspondent of Lyon & Co., with directions to sell the bonds and credit the proceeds of sale of twelve of the bonds to Lyon & Co., on their account with Moran, and to deposit the proceeds of sale of the remaining sixty-three bonds in the Bank of New York, to the credit of the Bank of Commerce of Buffalo, one of the deposit banks designated by the Common Council of Buffalo for the deposit of city funds. The bonds were sold by Moran, who deposited the proceeds as directed, by crediting the account of Lyon & Co. $12,768.00, the proceeds of twelve of the bonds, and depositing to the credit of the Bank of Commerce $67,252.50, the proceeds of the remaining sixty-three bonds, which sum the Bank of Com-

merce, on being advised, credited to the account of Bork, the treasurer. Lyon & Co., at the time of this transaction, were indebted to Moran on overdrafts in a sum exceeding the credit to their account from the sale of the bonds. Bork made no entry in the treasurer's books of the sale of the bonds. He neither charged himself with the bonds nor credited the city with the proceeds. The credit in the Bank of Commerce did not disclose the source from which it was derived. The delivery of the bonds by the comptroller to Bork for sale was in accordance with the general custom in respect to bonds issued by the city during the incumbency of Bork. The city during that period had issued bonds to the amount of one or two millions of dollars for various purposes, and a large part of them had been negotiated by Bork, they having been placed in the hands of the comptroller for that purpose.

*Grover Cleveland*, counsel for the prisoner, plaintiff in error.—I. The indictment is fatally defective because it does not allege that the bonds charged to have been obtained and received by defendant, were held by the comptroller of the city of Buffalo " for or on behalf of any public or governmental interest."

The words omitted from the indictment are a part of the statutory definition of the offense, and are absolutely necessary.

It is elementary that an indictment upon a statute must state all the facts and circumstances which constitute the statutory offense so as to bring the accused perfectly within the statute. The doctrine is sustained by Stevens *v*. People, 1 *Hill*, 261 ; People *v*. Allen, 5 *Den.* 76 ; Wood *v*. People, 53 *N. Y.* 511 ; Phelps *v*. People, 72 *N. Y.* 334 ; State *v*. Thomas, 2 *McCord* (*S. C.*) 527 ; Lohman *v*. People, 1 *N. Y.* 380 ; People *v*. Payne, 3 *Den.* 88 ; People *v*. Taylor, 3 *Den.* 91.

As to embezzlement, it is not any person who may be guilty of the offense, but only such as occupy a certain relation. And this relation must be distinctly and correctly alleged, and it will not do to describe the person charged as an *agent* instead of a *servant*. People *v*. Allen, 5 *Den.* 76.

Under the statute under which the prisoner was indicted, it

is not all "money, funds, credits or property," of and concerning which the offense can be predicated, but only such "money, funds, credits or property," as are held or owned in a particular way or manner, to wit, "for or in behalf of any public or governmental interest." This way or manner is necessary to be alleged in the indictment, because without it the offense is not described.

The allegation in the indictment that the bonds were held by the comptroller "for and on behalf of the city of Buffalo" does not answer the description of the offense, because the statute does not predicate the crime upon money or property held by or on behalf of any city, or municipal corporation, but some "public or governmental interest." All money, bonds, and property held for and on behalf of the city of Buffalo by its officers are not held for public, governmental, or even municipal purposes.

The indictment is not aided by any allegation of the purpose for which the bonds mentioned were issued. The words " of the kind known as City and County Hall bonds," do not indicate that they were either issued or held for any public or governmental interest.

II. The indictment in this case is bad, for the reason that it does not appear thereby that the city of Buffalo had any authority to issue the bonds mentioned therein, or that the same were valid obligations. The indictment alleges merely, that the bonds were " unpaid and unsatisfied, issued by the said city of Buffalo." This is not a sufficient allegation of the validity of the bonds.

Bonds can only be issued by virtue of a special statute authorizing it and the bonds are not valid unless they are issued in strict compliance with the statute. 1 *Dillon Municipal Corporations* (3 ed.) § 117.

Whether or not the bonds had been lawfully issued is the foundation of all the rest, and should be distinctly charged in the indictment. Metzger *v.* Attica & Arcade R. R. Co., 79 *N. Y.* 171; Horton *v.* Town of Thompson, 71 *N. Y.* 513.

III. The court erred in refusing to quash the indictment because it does not appear from the allegations contained

therein that the bonds were of any value or that they were the money, funds, credits, or property of the city of Buffalo.

It has been already shown that the allegations of the indictment were insufficient, taken altogether, to charge that the bonds were valid obligations; therefore on the face of the indictment they are neither "money, funds, credits or property."

And the bonds were not in the hands of the comptroller of the city, the money, funds, credits, or property of the city, for then they had not been negotiated and had had no inception as valid securities. The paper upon which they were printed may be property, but that is too small a matter to notice.

Statutes have been regarded necessary to make promissory notes and other instruments for the payment of money a subject of larceny and embezzlement. 3 *R. S.* page 953, § 66; 3 *R. S.* 952, § 75. . But there statutes are of course not applicable to the offense of which the prisoner is charged.

The language of the second section of the act creating this offense shows quite plainly that the term credits is used in ordinary business significance. Because this thing called *credits* is a sort of intangible thing, incapable of actual conversion or obtaining or receiving, the statute declares, that the only way in which the offense may be committed of and concerning such credits, to wit: by the transfer of the same from any credit with any bank, banker, etc., whereby the right, title or possession of the lawful custodian shall be defeated, shall be a conversion. This is exactly done by the unauthorized taking from the credit of the one to whom it belongs and putting it to the credit of another. This is the exact and only way the offense can be committed as to credits, and more than this, it is declared in the statute to be the act and thing and the only act and thing, constituting the crime, at least, where the subject of it is a credit.

There is no proof that the prisoner actually obtained or received the bonds from the comptroller, or that they were wrongfully received with intent to defraud, or that he converted them to his own use. There is no proof that the bonds were delivered by the comptroller to defendant at the city of Buffalo. The proof rather points to the conclusion that the comptroller

retained possession of the bonds until they were sent by express to New York for sale.

Therefore the *corpus delicti*, that the defendant had at any time within the county of Erie, the absolute and exclusive possession of the bonds is not fully and completely established.

The sections of the city charter with reference to the duties of the treasurer and comptroller were improperly read in evidence. The prisoner was not indicted for his acts as treasurer, or in his official capacity. The evidence tended to prejudice defendant's case by claiming that he not only received the bonds with intent to defraud the city, but that he did so while holding a place of trust under the city government, the duties pertaining to which did not include the negotiation of bonds.

The ordinary duties of the comptroller had no possible bearing on the case, as he became the custodian of the bonds and performed all acts in relation to them, by virtue of the law under which they were issued and the resolution of the Common Council.

Reception of proof of the resolution of the Common Council directing the issue of the bonds was improper. This evidence is immaterial and irrelevant because there are no allegations contained in the indictment which it supports, and in the absence of proper allegations in the indictment their place cannot be supplied by evidence.

*Edward W. Hatch,* district attorney, for the people, respondent.

[It is not considered necessary to insert the elaborate and exhaustive brief on behalf of the people, as its positions were sustained by the following opinion of the General Term.]

HARDIN, J.—Under chapter 19 of the Laws of 1875 the plaintiff in error was indicted, tried and found guilty. That statute is entitled, "An act to provide more effectually for the punishment of peculation and other wrongs affecting public moneys and rights of property."

Section one declares "every person who with intent to defraud shall wrongfully obtain, receive, convert, pay out or

dispose of . . . or in any other manner or way whatever shall aid or abet any other in wrongfully obtaining, receiving, converting, paying out or disposing of any money, funds, credits or property, held or owned by this state, or held or owned officially or otherwise for or on behalf of any public or governmental interest by any municipal or other public corporation, board, officer, agency or agent, of any city, county, town, village, or civil division, sub-division, department, or portion of this state, shall, on conviction of such offense, be punished by imprisonment in a state prison . . . &c."

Plaintiff in error insists the indictment is fatally defective, for the reason that it does not allege that the bonds charged to have been obtained and received by him were held by the comptroller of the city of Buffalo for or on behalf of any public or governmental interest.

The indictment charges: First : The city of Buffalo was and is a municipal corporation, duly organized and incorporated. Second : That Thomas R. Clinton was an officer of said city of Buffalo, to wit, comptroller of said city. Third : That on the first of October, 1875, at the city of Buffalo, as such officer of said city of Buffalo, " the said Thomas R. Clinton held officially for and on behalf of the said city of Buffalo, such city and municipal corporation as aforesaid, a large quantity of bonds of the said city of Buffalo, to wit : Two hundred bonds of the said city of Buffalo, such city and municipal corporation as aforesaid, then and there unpaid and unsatisfied, of the kind known as City and County Hall bonds, and of the denomination of one thousand dollars, each bond of the value of $1000, each bond the credits, funds and property of the said city of Buffalo, such city and municipal corporation as aforesaid. Fourth : That on the first day of October, 1875, at the city of Buffalo aforesaid, Joseph Berk, with intent to defraud the said city of Buffalo, such city and municipal corporation as aforesaid, feloniously, fraudulently, wickedly and wrongfully, did obtain and receive from some person or persons to the jurors aforesaid unknown, and did convert to his own use, pay out and dispose of a large quantity of bonds, to wit : One hundred bonds of the said city of Buffalo, such city and municipal corporation as aforesaid, then and there unpaid and unsatisfied, of the denomination of one

thousand dollars each bond, and of the value of one thousand dollars each bond, and of the value in the aggregate of one hundred thousand dollars, a further or more particular description of which said bonds, and of the kind, quantity and value of which said bonds is to the jurors aforesaid unknown, of the funds, credits, and property of the said city of Buffalo, such city and municipal corporation as aforesaid, then and there held so as aforesaid by said Thomas R. Clinton, such officer as aforesaid of the city of Buffalo, such city and municipal corporation as aforesaid, officially for and on behalf of said city of Buffalo, such city and municipal corporation as aforesaid, to the great damage of the said city of Buffalo, such city and municipal corporation as aforesaid, contrary to the form of the statute in such case made and provided, and against the peace of the people of the state of New York, and their dignity."

All elements and incidents of the crime, as the same is defined by the statute, are contained in the indictment. Phelps v. People, 72 N. Y. 334.

The bonds when held by Clinton, the comptroller, were by him held for the city of Buffalo. They were held by him officially for and on behalf of said city. That city is "a public or governmental interest," and when they were held by the comptroller, they were held for and on behalf of a public or governmental interest, by a municipal or public corporation. The bonds were the property of the city, and the fraudulent receiving of them, the fraudulently disposing of them, obtaining, converting or paying out thereof (they being the property of the city) was a crime within the intent and meaning of the statute.

All the facts needful in proof for the people to establish the crime defined by the statute were averred. The case is unlike Wood v. People (53 N. Y. 511), where it was needful to prove a pardon or discharge upon the expiration of his sentence, as the statute required, to establish the crime as a second offense.

It was said in that case that the indictment must aver all the things that make the offense. Folger, J., in People v. Phelps (72 N. Y. 355), says that, "the reason of that rule is to inform the accused of the leading grounds of the charge; to enable the court to pronounce the proper judgment affixed

by law to the combination of facts alleged, and to enable the party to plead the judgment in bar of a second prosecution."

We think the requirements of the rule, an averment of the elements and leading grounds of the charge under the statute, were satisfied and complied with so fully that the indictment should be upheld and pronounced by us sufficient under the statute.

The bonds in the hands of the comptroller were property. The paper and labor thereon had been procured by the city, to enable it to put them into the public market upon which to obtain a loan of money, in accordance with a statute authorizing the city to do so. People v. Wiley, 3 *Hill*, 194; Commonwealth v. Rand, 7 *Metcalf*, 476; Reg. v. Morris, 9 *Carrington & Payne*, 347; People v. Campbell, 4 *Parker*, 386; U. S. v. Nolton, 5 *Mason*, 537.

The jury have found that the plaintiff in error wrongfully with intent to defraud, obtained, received, and disposed of the funds, credit or property of the city, and that finding is supported by evidence, and we must accept their conclusion, in the consideration of the questions presented.

Their verdict was warranted by the evidence produced upon the trial.

It was not error to receive in evidence the resolution of the Common Council, authorizing the issue of the bonds, nor proof of the statutes under which the bonds were issued. These facts were proper to establish the validity of the bonds, and their value incidentally depended upon the authority upon which they were issued. Having found no error in the course of the trial, we must affirm the conviction.

Conviction affirmed and proceedings remitted to the Oyer and Terminer of Erie county, with directions to proceed thereon.

SMITH, P. J., concurs; TALCOTT, J., not voting.